## COMMONWEALTH *vs.* MINER L. RAY.

The fraudulent counterfeiting of a railroad ticket is forgery by the common law.

Forgery may be of a printed or engraved, as well as of a written instrument.

Forgery at common law, not being punishable by imprisonment in the state prison, is not a felony in this commonwealth since *St.* 1852, *c.* 37, and accessories before the fact to such a forgery are therefore punishable as principals.

In an indictment for forging a railroad ticket, expressed on its face to be " good this day only," a description of the ticket as signifying to the holder that it must be used continuously, and without stopping at intermediate stations, after once entering the cars, is a fatal variance.

FORGERY. The indictment alleged that the defendant, on the 13th of July 1854, at Boston, " did falsely make, forge and counterfeit a certain writing in the form and similitude of a railroad ticket or pass, of the tenor following:

New York Central Railroad.

Albany to Buffalo.

Good this day only, unless indorsed by the conductor.

D. L. Fremyre.

said counterfeit writing purporting to be a ticket or pass issued by the New York Central Railroad Company, whereby said corporation promise and assure to the owner and holder thereof a passage in their cars over their railroad, extending from Albany to Buffalo in the State of New York; said ticket being signed by D. L. Fremyre, on their behalf, he being their ticket clerk, or ticket agent; and said ticket signifying to the holder that it must

be used by him continuously, after once entering the cars, and without stopping at any of the intermediate places on the line of the railroad between said Albany and said Buffalo, unless indorsed by the conductor, another officer of said corporation, having charge of their trains of cars and authorized to make such indorsement of said ticket for the purpose aforesaid." The indictment then alleged " that on said thirteenth day of July there was a railroad extending from Albany to Buffalo aforesaid ; and that the same was then and there in the possession and use of a corporation, styled the New York Central Railroad Company ; and that good and genuine tickets in the similitude aforesaid, issued by said corporation, bearing the written and printed words aforesaid on their face, to wit," [setting them out] " then and there entitled the purchasers and owners thereof to a passage in the cars of said corporation over said railroad from said Albany to said Buffalo ; and that said tickets were then and there sold by said corporation for the price of six dollars each, and were of that value, to wit, at said Boston. And so " [the indictment averred] " that said genuine tickets, so issued and sold as aforesaid, were on said thirteenth day of July, at said Boston, the subjects of value, and in the nature of a contract between said corporation and the holders thereof, in manner aforesaid; and that the said Miner L. Ray did then and there falsely make, forge and counterfeit one of said tickets, with intent to defraud, against the peace of the Commonwealth."

At the trial in the municipal court, the attorney of the Commonwealth offered no evidence in support of the indictment, except the alleged forged ticket, and a genuine ticket, and the following written admission of the defendant : " The defendant admits, for the purposes of this trial only, that there is a corporation called the New York Central Railroad Company, and a railroad, called the New York Central Railroad, owned by said corporation, from Albany to Buffalo ; and that said corporation were in the habit of selling and issuing tickets in the similitude set forth, which were sold for six dollars each ; and the holders of such tickets were permitted and authorized by the corpora-

tion and by the conductor, on their presentation, to pass in their cars over their road from Albany to Buffalo. Said tickets consisted wholly of printed and engraved characters, and were in no part written or signed in manuscript:

" That the defendant, without any authority from said corporation, at some time in the year 1854, at said Boston, procured, through the agency of Taylor & Adams, engravers, and Hobart & Robbins, stereotype founders, a stereotype plate, from which the ticket in question, afterwards and before the filing of this indictment, at said Boston, was printed; but he was never personally present at the making or engraving or printing said plate or tickets, but was wholly absent therefrom, and did not in any way aid or assist therein:

" That the defendant, without any authority from said corporation, or any of its officers, and with intent to procure said ticket for his own purpose of unauthorized sale, sometime in the year 1854, at said Boston, carried the plate to one Thomas, a printer, who at his request and direction, and without complicity, but at a subsequent time, and before the finding of this indictment, and when the defendant was wholly absent, at said Boston, printed said ticket, which, at another subsequent time, and before the finding of this indictment, was delivered to the defendant, and afterwards was, at said Boston, sold by the defendant as one which would pass a person over that road."

*Bishop,* J. instructed the jury " that the words on the ticket, taken in connection with the facts agreed, constituted a contract good and binding as if fully written out; there were two parties to it, namely, the corporation and the holder or bearer; and the corporation might be sued on it, if the bearer was refused a passage, or was expelled from the cars by the conductor: Also that the name of said Fremyre was written on the ticket; that to be written, it need not have been signed by his sign manual or be in manuscript; it was immaterial whether the signature was made by a style, by a brush, by a type, or by a stamp or by a pen, if used by him or by his authority and direction: Also that the defendant was guilty of forgery, if he procured the ticket to be engraved and printed, although he was

personally absent, and did nothing of it with his own hand; obtaining another person to do it was the same as doing it himself, whether he was present or absent when it was done:    Also that there was no variance between the allegation and the proof as to the purport of the ticket, and that the purport of it was truly stated in the indictment:    Also that there was no variance between the allegation that the genuine ticket was signed by said Fremyre, and the proof that the supposed signature was engraved or printed, if done by the authority and direction of Fremyre; and that if the jury believed the evidence, it supported the indictment in all its parts."

The jury returned a verdict of guilty, and the defendant alleged exceptions to these instructions.

*S. D. Parker*, for the defendant.    It is admitted that this ticket is not one of the instruments enumerated in the Rev. Sts. *c.* 127, § 1.    The making, with intent to defraud, of such an instrument as is set forth in this indictment, is not a forgery at common law; for it is not a writing, and bears no written or personal signature, but is wholly printed and engraved, by machinery; and it contains no promise or complete contract which could be the foundation of an action; and is not an instrument authorized by statute, or known to the common law; but is a mere token, sign or check, to assist the memory of the conductor.    *The People* v. *Shall*, 9 Cow. 778, and cases cited.    *The People* v. *Fitch*, 1 Wend. 198.    *Regina* v. *Butterwick*, 2 M. & Rob. 196.    *Commonwealth* v. *Eastman*, 1 Cush. 217.

The defendant cannot be convicted, under this indictment upon this evidence; for he neither himself made the ticket, nor assisted in making it, nor was present when it was made.    *Rex* v. *Soares*, Russ. & Ry. 25.    *Rex* v. *Stewart*, Russ. & Ry. 363. 1 Russell on Crimes, (7th Amer. ed.) 26, 27.    Archb. Crim. Pl. (5th Amer. ed.) 3, 5.

The ticket given in evidence, expressed to be " good this day only," does not support the averment in the indictment that the ticket signified that it must be used continuously, without stopping, after once entering the cars.

*J. H. Clifford*, Attorney General, ( *G. Bemis* with him,) for the

Commonwealth. The case of *The King* v. *Ward*, 2 Ld. Raym. 1461, and 2 Stra. 747, " has settled the rule, that the counterfeiting of any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery at common law." 2 East P. C. 861. This instrument, taken in connection with the proved use and value of the genuine ticket, is the subject of forgery. *Regina* v. *Boult*, 2 Car. & K. 604. *Regina* v. *Sharman*, 6 Cox C. C. 312. *Commonwealth* v. *Ayer*, 3 Cush. 150. Hammond on Forgery, 7, 8. By *St.* 1646, the forgery of " any writing, to pervert equity and justice," was punishable. Anc. Chart. 115. See also Plymouth Colony Laws, 82, 249. It is not necessary that the instrument should be a contract, or even in the nature of a contract. Rep. of Penal Code of Mass., Forgery, § 11, and cases cited. Hammond on Forgery, 134–137. But a railroad ticket is a contract. *Cheney* v. *Boston & Maine Railroad*, 11 Met. 121.

The defendant's act is a forgery, so far as the mode of fabrication by means of printing or engraving is concerned. Hammond on Forgery, 6, 9. Rep. of Penal Code of Mass., Forgery, § 2. 7th Rep. Eng. Commissioners on Crim. Law, 271. 1 Livingston's Penal Code, art. 290. *Henshaw* v. *Foster*, 9 Pick. 312. Rev. Sts. *c.* 2, § 6, *cl.* 1. Burrill's Law Dict. " Writing." *Regina* v. *Boult*, 2 Car. & K. 604. Chit. Con. (8th Amer. ed.) 69. *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238. *Schneider* v. *Morris*, 2 M. & S. 286. 2 Bl. Com. (Chit. ed.) 296 *& note.* 1 Hume Crim. Law, 138.

Forgery may be committed by the agency of another, and the party who procures it to be done indicted as a principal, if the offence is a felony. See Rev. Sts. *c.* 133, §§ 1, 2; *St.* 1852, *c.* 37. And if it be a misdemeanor, all are principals. See also *Commonwealth* v. *Stevens*, 10 Mass. 181; *Commonwealth* v. *Hill*, 11 Mass. 136; *Commonwealth* v. *Haley*, 7 Met. 462; Whart. Crim. Law, 496, 633.

The instrument being fully set out in the indictment, the statement of its purport was unnecessary; and the averment that the ticket required a continuous journey, by the same train of cars, if incorrect, may therefore be rejected as surplusage. *Dunnett's case*, 2 East P. C. 985. *The Queen* v. *Williams*, 2 Denison, 61.

*Commonwealth* v. *Parmenter*, 5 Pick. 279. *Commonwealth* v *Snelling*, 15 Pick. 335, 336.

DEWEY, J. The instrument here set forth as the subject of the alleged forgery is not one included in the enumeration in the Rev. Sts. *c.* 127, § 1. It is not, therefore, a statute offence. But many writings, not enumerated in the statute, are yet the subjects of forgery at common law. The definition of forgery at common law is quite sufficient to embrace the present case. Take that in 4 Bl. Com. 247, " the fraudulent making or alteration of a writing to the prejudice of another man's right," or that of 2 East P. C. 861, (which is supported by Bac. Ab. Forgery, B, and followed in 2 Russell on Crimes, 358,) that " the counterfeiting of any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery at common law ; " or that of Mr. Justice Buller, " the making a false instrument with intent to deceive." *Rex* v. *Coogan*, 2 East P. C. 949. In 3 Greenl. Ev. § 103, it is said that forgery " may be committed of any writing which, if genuine, would operate as the foundation of another man's liability." See also *Regina* v. *Boult*, 2 Car. & K 604.

It is said that this instrument does not import a contract or promise of any kind. We think otherwise, and that, although it is wanting in details of language, fully stating the nature and extent of such contract, it has written language sufficiently indicative of a promise or obligation, to render it an instrument of value, by the false and fraudulent making of which the rights of others would be prejudiced. This false instrument would, if genuine, have created a liability on the part of the New York Central Railroad Company to carry the holder thereof from Albany to Buffalo, and would therefore have been a contract of value in the hands of a third person.

It is then objected that the crime of forgery cannot be committed by counterfeiting an instrument wholly printed or engraved, and on which there is no written signature personally made by those to be bound. The question is whether the writing, the counterfeiting of which is forgery, may not be wholly made by means of printing or engraving, or must be written by

the pen by the party who executes the contract. In the opinion of the court, such an instrument may be the subject of forgery, when the entire contract, including the signature of the party, has been printed or engraved. The cases of forgery, generally, are cases of forged handwriting. The course of business, and the necessities of greater facilities for dispatch, have introduced, to some extent, the practice of having contracts and other instruments wholly printed or engraved, even including the name of the party to be bound.

The effect to be given to the words "writing" and "written" was much considered by this court in the case of *Henshaw* v. *Foster*, 9 Pick. 312. It arose in another form, and was not a question of forgery. But in the learned opinion of the late Chief Justice Parker, this question, as to what was embraced in these terms, seems to be fully settled, and it was there held that the words "writing" or "written" included the case of instruments printed or engraved, as well as those traced by the pen.

It has never been considered any objection to contracts required by the statute of frauds to be in writing, that they were printed. It is true that in those cases, usually, the signature at the bottom is in manuscript, and the printed articles of contract leave the name to be thus filled up. In such cases, the signature by the pen is necessary to the execution of the contract. And this is the more expedient mode, as it furnishes the greater facility for ascertaining its genuineness. But if an individual or a corporation do in fact elect to put into circulation contracts or bonds in which the names of the contracting parties are printed or lithographed, as a substitute for being written with the pen, and so intended, the signatures are to all intents and purposes the same as if written. It may be more difficult to establish the fact of their signatures; but if shown, the effect is the same. Such being the effect of such form of executing like contracts, it would seem to follow that any counterfeit of it, in the similitude of it, would be making a false writing, purporting to be that of another, with the intent to defraud.

It is further insisted that this indictment cannot be sustained against the present defendant, because he did not personally aid

in the actual manual operation of engraving, printing or lithographing the alleged spurious railroad ticket. It is conceded, that it was done by his procuration—that he procured the stereotype plate from which the ticket was printed, and that he carried the plate to a printer, who, at his request and on his behalf, printed the tickets and delivered them to him. These facts are quite sufficient to charge the defendant. It is immaterial, perhaps, whether this be treated as a case of felony or misdemeanor. See Rev. Sts. *c.* 133, §§ 1, 2, providing for the trial and punishment, as principals, of accessories before the fact in cases of felony. But if it be a case of mere misdemeanor at common law, then the parties concerned are all principals. This case, not being within the Rev. Sts. *c.* 127, § 1, is only an offence at common law, and not punishable by imprisonment in the state prison; and therefore, by force of *St.* 1852, *c.* 37, it is not a felony, but a misdemeanor only.

But upon another point a majority of the court are of opinion that the exceptions taken to rendering judgment upon this verdict must prevail. This railroad ticket, thus alleged to be forged, does not state in terms any contract in detail, but only abbreviations and words from which a contract may be properly inferred and be legally stated. It is not enough to set forth the instrument merely in the abbreviated form in which it is printed, but it must be accompanied by other averments stating the legal contract, and showing some valuable legal interest arising from the possession and ownership of such instrument or ticket. This the indictment purports to do, and alleges in detail the contract arising from the instrument. In setting forth the contract or rights secured to the holder of such ticket, it describes it as " purporting to be a ticket or pass issued by the New York Central Railroad Company, whereby said corporation promise and assure to the owner and holder thereof a passage in their cars over their railroad, extending from Albany to Buffalo," and as " signifying to the holder that it must be used by him continuously, after once entering the cars, without stopping at any of the intermediate places on the line of the railroad between said Albany and said Buffalo, unless indorsed by the conductor."

This latter statement, as to the continuous use of the cars, without stopping at any of the intermediate places, may accord with the practice of travellers holding such tickets, but is not one of the terms and stipulations of the ticket. It is, " Good this day only, unless indorsed by conductor." The restriction arising from the ticket is only that the holder shall travel from Albany to Buffalo, by cars that will carry him through in the same day. He is at liberty to stop at any intermediate place, and take a seat in a succeeding train, if his delay is so short as to give him time to make the entire trip the same day. The averment as to the contract should have been, therefore, that the ticket was good for one day only, or required the entire trip to be made in one day. There is therefore a palpable variance between the terms of the contract indicated by the ticket, and that set forth in the indictment as such.

The further inquiry is, whether the variance is fatal to the indictment, or may be rejected as surplusage. It cannot be rejected as surplusage, unless the entire statement of the terms of the contract, made in connection with this, can also be rejected ; as it is directly connected with it, as part of one and the same contract. But that cannot be done, because, if these statements of the legal interest acquired by the holder of the ticket were stricken out, the indictment would be defective, in not setting forth that the counterfeit paper was a paper purporting to be such as would be the subject of forgery. The further averments, in the indictment, that good and genuine tickets bearing the words borne on this ticket were issued by the New York Central Railroad Company, and that said tickets entitled the owners thereof to a passage in their cars from Albany to Buffalo, apply to the genuine tickets. The allegation of the legal effect of the instrument alleged as a counterfeit was a material one, and being so, cannot be rejected as surplusage. The alleged forged paper not being accurately set forth, the objection of variance is well maintained, and for that cause the verdict must be set aside.