JOSE F. J. XIQUES, Appellant, *v.* THE BRADSTREET COMPANY, Respondent.

*Mercantile agency — reports upon financial standing — its liability to its subscribers.*

When the contract between a mercantile agency company and one of its subscribers, for the furnishing of information as to the financial standing of persons in business, expressly stipulates that the company "shall not be liable for any loss or injury caused by the neglect or other act of any officer or agent of the company in procuring, collecting and communicating said information," the company cannot be held liable to the subscriber for the consequences of misinformation, unless the company is so grossly negligent in acquiring or communicating it that its conduct in effect amounts to a fraud.

When a subscriber to a commercial agency company, under a contract to furnish information, which contains the above stipulation and a stipulation to the effect that the company does not guarantee the correctness of its information, applies to the company for information as to the commercial standing of a person named, described in the inquiry as doing business at a certain address in a certain city, and the company, not finding such person at the address given, furnishes a favorable and correct report upon a person of the same name doing business at another address in the city named, and the subscriber then, without making further inquiries, sends goods on credit to the address mentioned in his inquiry, but to which the report did not relate, and it turns out that no person

of the name in question is doing business at the address to which the goods were sent, but they are delivered by the carrier to a person calling himself by that name, and are not paid for, the subscriber cannot, on such facts and in the absence of evidence that the company did not make inquiries, maintain an action against the company to recover damages on the ground that they were occasioned by its negligent performance of its contract to furnish information.

APPEAL by the plaintiff, Jose F. J. Xiques, from a judgment of the Supreme Court, dismissing his complaint, entered in the office of the clerk of the city and county of New York on the 5th day of December, 1892, upon a verdict directed for the defendant at the New York Circuit, and from an order denying the plaintiff's motion for a new trial made upon the minutes.

*Benjamin G. Hitchings,* for the appellant.

*John H. Bird,* for the respondent.

FOLLETT, J.:

This action was brought to recover damages occasioned by the alleged negligent performance of a contract entered into between the parties.

Since 1884 the plaintiff has been a manufacturer and dealer in cigars in the city of New York. In 1876 the defendant was incorporated under the laws of the State of Connecticut, for the purpose of conducting a mercantile agency and collecting and disseminating information in respect to the standing and condition of persons engaged in business within the United States and Dominion of Canada. In the course of its business the defendant for many years has published printed volumes containing the names of persons, firms and corporations engaged in business, the kind of business in which engaged and their place of business, and also showing their supposed financial standing and business reputation. The defendant in the course of its business delivers a copy of this book to every one of its subscribers.

On the 12th of January, 1885, the litigants entered into a written contract, of which the following is a copy:

" (129) ORIGINAL — FOR THE BRADSTREET COMPANY.

" THE UNDERSIGNED hereby employs THE BRADSTREET COMPANY, from January 12th, ...... 1885, to January 12th, ...... 1886, to

procure, to the best of its ability, information concerning the responsibility and character of MERCANTILE PERSONS inquired for, within the States represented in the volumes loaned, said inquiries not to exceed ...... 50 ...... except as hereinafter agreed. And in consideration of such service, including the loan of the January ...... 1885, ...... 188 , July, ...... 1885, and ...... 188 . Volumes of its U. S. and Canada Reports, the undersigned hereby agrees to pay THE BRADSTREET COMPANY, ...... one hundred ...... dollars, pay $50 now and $50 1st July, '85, at the commencement of the said subscription term, and for each inquiry exceeding the ...... 50 ...... before-mentioned thirty-three and one-third cents on demand. And it is further expressly agreed, by the undersigned, that all information, whether printed, written or verbal, furnished by THE BRADSTREET COMPANY, to the undersigned, shall be held in strict confidence, and shall never be revealed to the persons reported; that the undersigned will neither ask for information for the use of other parties, nor permit it to be done; that the said company shall not be liable for any loss or injury caused by the neglect or other act of any officer or agent of the company in procuring, collecting, and communicating said information; that the said company does not guarantee the correctness of the aforesaid information, and that the said volumes to be loaned, as aforesaid, shall be returned to the company, without notice from it, upon the receipt by the undersigned of any subsequent edition of its books, or at the expiration of the subscription term. It being understood and agreed that the company reserves the right to reject, or, upon the return of a *pro rata* sum of the amount paid, to cancel this subscription and recall the volumes. The conditions of this subscription, as set forth above, embody and merge all the agreements and understandings heretofore made or had with said company, or its agent or agents acting in its behalf, either verbal or written.

" J. F. J. XIQUES.

" Street address ...... 376 Canal st.

" Dated at Jany 12th, New York, ..... 1885, P. O. Box .....
" Enter here place at, and date when signed."

The volume delivered to the plaintiff contains the following:
" Herman Brinker, grocer, Detroit, Michigan.          W. D."

The letters W. D. indicate that Brinker was estimated to be worth two or three thousand dollars, and that his credit was fair.

A copy of the above contract was inclosed to the plaintiff in a letter of which the following is a copy :

> "EXECUTIVE OFFICES,
> "NEW YORK, *Dec.* 31, 1886.
>
> "Established 1849.
>
> "CHARLES F. CLARK, *Pres.*, EDWARD F. RANDOLPH, *Treas.*
>
> "Capital & Surplus exceed $1,500,000.
>
> "THE BRADSTREET COMPANY.
>
> "Executive Offices, 279, 281, 283 Broadway.
>
> "NEW YORK, *Dec.* 31, 1888.
>
> "Mr. J. F. J. XIQUES,
> "*New York, N. Y.:*
>
> "We are to-day in receipt of your subscription and, having entered its details on our ledger, beg to hand you herewith a verbatim copy of same that there may be no misunderstanding on your part as to its terms and conditions.
>
> "We shall spare no efforts to furnish you information promptly in reply to your inquiries and shall, in return, require at your hands a full recognition of our rights as set forth in the contract.
>
> "Yours very truly,
> "CHARLES F. CLARK,
> "*President.*"

In September, 1885, the plaintiff received two letters of which the following are copies:

> "OFFICE OF HERMAN BRINKER,
> "263 GRAND RIVER AVE.,
> "DETROIT, MICHIGAN, *Sept.* 19*th*, 1885.
>
> "Mr. JOSE F. J. XIQUES, *New York:*
>
> "DEAR SIR — Please send me by express, samples of your manufacture, ranging in prices from $25 to $35, and from $45 to $65. Should you keep imported Havana segars, please quote the prices, and if convenient, send also a few samples.
>
> "Very respectfully,
> "H. BRINKER.

" Office of Herman Brinker,
        " 63 Grand River Ave.,
    " Detroit, Michigan, *Sept.* 28, 1885.

" Mr. J. F. J. Xiques, *New York:*

" Dear Sir — Yours of Sept. 25th received, and would be pleased to see samples of domestic and imported cigars. Domestic to range in prices from $25 to $35, and $55 to $75, and imported up to about $150 per mille. Please send per American Express.
                " Very respectfully yours,
                        "H. BRINKER."

Shortly after the reception of the last letter, the plaintiff sent samples of cigars, of the value of sixty-three dollars and seventeen cents, addressed to " Herman Brinker, 63 Grand River Avenue, Detroit." Afterwards the plaintiff received the following letter and order :

" Office of Herman Brinker,
        " 63 Grand River Ave.,
    " Detroit, Michigan, *Oct.* 5, 1885.

" Mr. J. F. J. Xiques, *New York:*

" Dear Sir — Yours of the 1st inst., and samples to hand, and sent you enclosed an order for 5 milles imp. cigars. Please ship same per Blue Line fast freight, via Canada Southern. Some of the domestics that you sent me, I think will take here, and will see what can be done with them. Please send me samples of your Picadura Cheroot, and I have no doubt that I can handle it satisfactorily if the price is not too high, and goods acceptable. You did not quote price for them.

" If I should introduce the brand, I would, as a matter of course, expect to have sole control of same for Detroit and vicinity, as per your proposal.

" Expecting to hear from you.
                " Very respectfully,
                        " H. BRINKER.

"·OFFICE OF HERMAN BRINKER,
"·63 GRAND RIVER AVE.,
"DETROIT, MICHIGAN, *Oct.* 5, 1885.

"Order, per fast freight, Blue Line, via Canada Southern.

| 2 milles | ........... | Fanita | ............... | Medianos | .... | 77 |
| 1 " | ............ | " | ............... | Bouquets | ..... | 115 |
| 1 " | ............ | Carolita Conch | ........ | Esp | ........... | 91 |
| 1 " | ............ | " | ........ | Reg. Reina ex. | | 105 |

"Please select medium colors."

On the 7th of October, 1885, the plaintiff sent the following inquiry to the defendant:

"BRADSTREET'S,
"Nos. 279, 281, 283 BROADWAY.
"NEW YORK, *Oct.* 7, 1885.

"Give us in confidence, for our exclusive use and benefit in our business, as per contract, the results of your investigations concerning the character, standing, responsibility, etc., of

| "Name | ........................ | Herman Brinker. |
| "Business | ........................ | Grocer. |
| "Street and No | ........................ | 63 Grand River Ave. |
| "City (or P. O. Address) | ................ | Detroit. |
| "County | ........................ | |
| "State | ........................ | Michigan. |
| "J. F. J. Xiques | ................ | Subscriber. |
| "192 B'way | ................ | P. O. Address. |

"No information will be furnished except upon the proper filling up of this blank, *and the signature of the subscriber.*"

Stamped on face: "Western Department, New York, Oct. 14, 1885.

"Rec. 3, 22, '82."

To this inquiry, the defendant replied as follows:

"Brinker, Herman, Grocer & Saloon, Detroit, Michigan, 573 Russel, cor. Ohio.

"Additional:

"Has continued doing quite fairly since last report, and has been making steady headway. Property has also grown some in value, and he is now estimated worth 3 to $5,000, reported as a cash buyer

here in most instances, but would be granted a moderate line if he asked it. Is spoken of as a German of very fair character, &c. "60. 10, 21, 1885. 27, 3. V. D. Oct. 12, 1885."

Indorsed as follows:

"N. Y., 10–14, 1885.

"To J. F. J. XIQUES:

"The correctness of this report is not guaranteed, but having been obtained by us in good faith — from authorities deemed reliable — it is transmitted to you in strict confidence for your exclusive use and benefit, and in accordance with the terms of the contract existing between us.

"Respectfully,
"THE BRADSTREET COMPANY."

October 15, 1885, the plaintiff shipped 5,000 cigars, pursuant to the foregoing order, of the value of $455, via the Canada Southern Blue Line, addressed to "Herman Brinker, 63 Grand River Avenue, Detroit, Michigan," which were delivered on the nineteenth of the same month to some person calling himself Herman Brinker, at No. 163 Grand River avenue. The cigars were not paid for, and Brinker not making any reply to the plaintiff's letters, the latter addressed the following inquiry to the defendant:

"BRADSTREET'S,
"Nos. 279, 281, 283 BROADWAY.
"NEW YORK, *Dec.* 10, 1885.

"Give us in confidence, for our exclusive use and benefit in our business, as per contract, the results of your investigations concerning the character, standing, responsibility, etc., of

"Name........................ Herman Brinker.
"Business ..................... Cigars.
"Street and No.................. 63 or 263 Grand River Ave.
"City (or P. O. Address) .......... Detroit.
"County........................
"State......................... Mich.
     "J. F. J. Xiques......... Subscriber.
        "192 B'way........... P. O. Address.

"No information will be furnished except upon the proper filling up of this blank, *and the signature of the subscriber.*"

Stamped on face : " Western Department, New York, Dec. 18, 85, Cret. 12, 10, 85."

To this inquiry the defendant made the following reply :

" (20)

" Brinker, Herman ............. Cigars, &c. ...... Detroit, Mich.
63, 163 or 263 Grand River Ave.

" No such party can be found at any of the numbers given above, neither is there such a number as 597 Russell St., the only person of above name known here is at 573 Russell Street, corner Ohio.

"*Dec.* 16, 1885."

Indorsed on back :          " NEW YORK,                              18 .

" To ........ The correctness of this report is not guaranteed, but having been obtained by us in good faith — from authorities deemed reliable — it is transmitted to you in strict confidence for your exclusive use and benefit, and in accordance with the terms of the contract existing between us.

" Respectfully,
" THE BRADSTREET COMPANY."

On the 18th of December, the plaintiff inquired of the defendant : " Have you any further reports of Herman Brinker, 63 Grand River Avenue, Detroit, Michigan ? "   To this inquiry the defendant made the following reply :

" ........ 7 ........

" Brinker H. .............. Cigars ......... Michigan, Detroit
163 Grand River Ave.

" Upon a close investigation of this case it is found that such a party who is described as a light complexioned man, aged about 35 or seven years, rented a small space in front room at above location during the latter part of Sept. last of Geo. R. McDonald — who occupies the place as a plumbing shop and dwelling — at a rental of $2 per month.  He paid his rent as agreed upon, but said very little about himself, except that he admitted that he was a married man, and claimed to be making $10 or more a day.  No information was however volunteered as to his previous abiding place or business.  Was in and out every day or so, looking for mail or other matter, and replenishing his satchel from the occasional packages of goods which came to the store for him, the last one of which he

emptied about six weeks ago, since which time nothing has been seen or heard of him.   He left no directions as to his mail matter either with " McD." or with P. O. authorities.   The Cartage Co. who delivered the goods looked for him first at No. 63 Grand River, the mdse. having been billed out to that number, but not finding him were referred to the one above.   The different packages were receipted for and charges paid by Mrs. McDonald at B.'s request, he having exhibited bills of lading to the Cartage Co., who eventually got his acknowledgment on all of the receipts except the last one, in which instance they seemed to have neglected the matter.   The last delivered to the above address was one case of cigars via Blue Line way bill 3351, Canada Southern Line Car No. 15099.   Left N. Y. Oct. 16th, arrived here Oct. 20th and was delivered same day. A comparison of signature — on copy of letter enclosed — with that of Herman Brinker, 573 Russel st., shows no similarity.   Over 200 of these were carefully examined at his bank where a savings account has been kept ever since 1876.   Aside from this he is not a man who would become a party to any such transaction as above named.

"*Dec.* 24, 1885.

" 60 12–24–1885   27–3 Pass."

Indorsed :

" N. Y. Dec. 28, 1885.   To J. F. J. Xiques.   The correctness of this report is not guaranteed, but having been obtained by us in good faith — from authorities deemed reliable — it is transmitted to you in strict confidence for your exclusive use and benefit, and in accordance with the terms of the contract existing between us.

" Respectfully,
" THE BRADSTREET COMPANY."

This action was brought to recover the value of the samples first shipped and of the cigars shipped pursuant to the order of October 5, 1885.   On the trial the plaintiff failed to show that it made any inquiry of the defendant before the shipment of the samples, and he abandoned all claim to recover on account of them.   The gravamen of the complaint is that " the defendant   *   *   *   without any investigation or inquiry and without having any knowledge or information concerning any man of that name located or doing business at the place specified in the inquiries carelessly and negli-

gently reported that Herman Brinker, giving a number in Russell street, was worthy of credit."

It is to be observed that, by the terms of the contract entered into between the litigants, it was expressly stipulated " that the said company shall not be liable for any loss or injury caused by the neglect or other act of any officer or agent of the company in procuring, collecting and communicating said information." Under this stipulation the defendant cannot be held liable for the consequences of misinformation, unless it is so grossly negligent in acquiring or communicating it that its conduct in effect amounts to a fraud.

The first question presented for consideration is, was the evidence sufficient to raise an issue of fact for the jury as to whether the defendant was grossly negligent in answering the plaintiff's inquiry?

The plaintiff by his letter of October seventh asked for a report in respect to Herman Brinker, grocer, 63 Grand River avenue, Detroit. The defendant's reply of October twelfth related to Herman Brinker, grocer and saloon, 573 Russell, corner Ohio, Detroit, Michigan. The letters written to the plaintiff by Brinker do not purport to come from a person engaged in business as a grocer, nor indeed do they show that the writer was engaged in any other business than as a dealer in cigars. The communication of the defendant did not purport to relate to Herman Brinker of 63 Grand River avenue, but distinctly referred to Herman Brinker, a grocer, engaged in business at 573 Russell street. The plaintiff offered no evidence tending to show that the defendant did not make proper inquiries of its correspondents at Detroit, and the allegation in the complaint that it did not was entirely unsupported by the evidence. It is very plain upon the face of the defendant's communications that it did not assume to give any information in regard to the financial standing of Herman Brinker of 63 Grand River avenue; and the plaintiff having failed to show that the defendant did not make inquiries, we are unable to see how it can be successfully maintained that he established that the defendant was negligent either in the inquiry which it made or in communicating the information.

The nature of the business in which the defendant is engaged is such that reliable information as to the wealth and integrity of persons engaged in business cannot be guaranteed. Dealers are often honestly mistaken as to their own financial situations, and the means

of others for learning their exact condition are limited and often uncertain. If the truth could in all cases be learned and reported, those giving credit would seldom, if ever, sustain a loss. All that can be demanded of such a corporation is that it shall make due and diligent inquiries and furnish the results to its customers. It seems to us that the evidence in this case shows that the defendant made such inquiry in respect to the business standing of the person inquired after, and, failing to find the person described engaged in business at the place designated by the plaintiff's letter, made a report about another person engaged in a similar business at another place in the same city. The defendant did not guarantee that the person reported was the person inquired after, which appears upon the face of the communications which it sent to the plaintiff.

Did the plaintiff, by his negligence, contribute to the loss of his goods? After having received the defendant's communication, which related solely to a person doing business at No. 573 Russell street, without making further inquiries, he shipped his goods to a person of the same name, purporting to be engaged in business at No. 63 Grand River avenue. The evidence shows that a man by the name of Herman Brinker was at the time engaged in business at No. 573 Russell street; that he was in good credit; worth from $3,000 to $5,000, and that the information furnished in respect to this person was correct.

Whatever of negligence there was in the case was the plaintiff's in shipping goods to a person, at a street and number, about whom no information had been given by the defendant. The plaintiff having received reliable information in respect to the standing of Herman Brinker of Russell street, negligently shipped his goods to a Herman Brinker of 163 Grand River avenue, and they were delivered by the carrier to some person who called himself Herman Brinker, at that number. This negligence was the cause of the plaintiff's loss.

We think that the trial court correctly ruled that there was no question of fact for the jury.

The judgment should be affirmed, with costs.

PARKER. J., concurred.

VAN BRUNT, P. J. :

I concur. There was no attempt to furnish any information as to a man located on Grand River avenue.

It was a man doing business at 573 Russell street, corner Ohio, that was reported upon, and no goods were sent to him.

Judgment affirmed, with costs.