HENRY BAUMANN, Plaintiff, *v.* THE BRADSTREET COMPANY, Defendant.

First Department, June 20, 1933.

*Herbert Zelenko* of counsel [*Jacob Zelenko* with him on the brief; *Zelenko & Wald*, attorneys], for the plaintiff.

*Thomas F. Compton* of counsel [*John I. Snyder*, attorney], for the defendant.

TOWNLEY, J. The question presented on this submission of controversy is whether the defendant, The Bradstreet Company, is liable for damages arising out of its alleged gross negligence because of the manner in which it acquired and communicated information in answer to the inquiry of E. R. Kauders & Company, Inc., its subscriber, concerning the credit rating of one A. M. Atheras.

The subscriber asked the defendant's Chicago office concerning the credit risk of a prospective customer, A. M. Atheras. The customer had on September 17, 1931, written the subscriber a letter seeking business. The defendant's Chicago office forwarded the inquiry to New York. The defendant's records show that Atheras had been investigated by them over a period of eighteen years. It appeared that Atheras had developed a small importing business having a capital in 1913 from $10,000 to $20,000 to a business with a capital of $125,000 to $200,000 in 1931. During this entire period he received a first grade credit rating. The record showed that he paid his bills promptly and that the defend-

ant had received no unfavorable information of any description. On September 24, 1931, one of the defendant's investigators called on Atheras. He was found in the same business quarters. The investigator was told that the business was in good condition and that although a judgment had been entered against him, it was in a disputed contract matter and had been satisfied. Atheras then promised to send an up-to-date financial statement as soon as possible. The defendant thereupon sent in a report on September 25, 1931, which summarized their New York records. Plaintiff received the report on September 30, 1931, and sold some goods to Atheras on the basis of a forty-five-day trade acceptance in the amount of $1,516.79.

The investigator from the defendant's New York office continued to call at Atheras' place of business to get the financial statement. This statement was definitely refused on November 4, 1931. Defendant became suspicious and on November fourth voluntarily and without extra charge sent a report to plaintiff warning plaintiff against extending credit to Atheras. On November 18, 1931, the defendant found that certain judgments, of which it had hitherto known nothing, were outstanding in New York county against Atheras. On November eighteenth a further report was voluntarily sent by defendant to plaintiff stating that goods should not be shipped except for cash. Plaintiff, however, had shipped goods as a result of the first report and had been paid only $400 on account. There is a balance of $1,154.04 which was not collected due to Atheras' financial irresponsibility. Plaintiff now endeavors to hold the defendant liable for this amount.

The contract between the parties contains a stipulation that the defendant " shall not be liable for any loss or injury caused by the neglect or other act of said company or any of its officers, agents or employees in procuring, collecting and communicating said information." This clause in the contract has been construed to mean that " the defendant cannot be held liable for the consequences of misinformation, unless it is so grossly negligent in acquiring or communicating it that its conduct in effect amounts to a fraud." (*Xiques* v. *Bradstreet Co.*, 70 Hun, 334; affd., 141 N. Y. 605.)

The question is whether it was grossly negligent for the defendant not to have its investigator examine the judgment against Atheras outstanding in New York county. The defendant has never made the practice of examining official records for judgments. The contract duty is to investigate and furnish information on record in its offices or obtained within a given period concerning the responsibility, character, reputation and credit of a mercantile

person doing business within the specified territory. There is no specific agreement or guaranty that judgments against a company shall be looked up. The report furnished showed clearly the nature of the investigation that had been made and on what sort of information the defendant's opinion was based. There was no representation that a search for judgments had been made or that there were no judgments. We believe that the plaintiff's assignor received everything for which it bargained with defendant company and that not only was no gross negligence proved but that no negligence of any kind was shown on this record.

Judgment accordingly should be directed for the defendant, with costs.

FINCH, P. J., MARTIN and O'MALLEY, JJ., concur; McAVOY, J., taking no part.

Judgment directed for defendant, with costs. Settle order on notice.