RALPH BALDUCCI, Plaintiff, *v.* SAMSON B. ZENNER, Doing Business as CREDIT SERVICE BUREAU, Defendant.

Supreme Court, Special Term, Onondaga County, November 26, 1951.

*Charles A. Wilkins* and *Frank C. McCarthy* for defendant.

*Victor Levine* for plaintiff.

SEARL, J. Motion No. 1 is for an order to vacate notice to take testimony of the defendant. Motion No. 2 seeks an order to preclude plaintiff from giving evidence on the trial as to items required in a further bill of particulars. The action has been brought for the purpose of obtaining a judgment in the sum of $22,328.20 against the defendant in a tort action based on claimed gross negligence and fraud. The import of the complaint is to the effect that plaintiff was about to make a loan, or advancement, to one Claude H. Wood and for a consideration called upon defendant, conducting a credit service bureau, to furnish a report with reference to the financial standing of Claude H. Wood, and in particular whether or not he had ever been sued, garnisheed or been through bankruptcy.

The complaint then sets forth that relying upon a report from the defendant that Wood had never been sued, garnisheed or been through bankruptcy, the plaintiff loaned him a large sum

of money; that there remains unpaid the sum of $22,328.20, with interest; that Wood has left the State, his whereabouts being unknown. Judgments have been docketed against him which are unsatisfied, and, further, that in November, 1937, Wood had filed a voluntary petition in bankruptcy in the United States District Court for the Northern District of New York and had obtained a discharge in bankruptcy in March, 1938. The complaint further alleges that the loans were made to Wood relying upon the report received from the defendant that Wood had never been through bankruptcy, and that had such fact been known the loans or advances would not have been made.

The complaint charges the defendant with gross negligence and fraud. Fraud, in the ordinary accepted interpretation of the word comprehends a statement oral or written by one who knows the statement to be false when uttered.

The older definitions of fraud, as taken from reported cases in the State of New York would justly lead one to the belief that trickery, cunning or deceit must be present as facts, from which the conclusion of fraud is drawn. *Studer* v. *Bleistein* (115 N. Y. 316) held the essential element of fraud to be deceit. In *Matter of Reiffeld* (36 Misc. 472, 473) the court used the definition given in the Standard Dictionary, namely: " ' any artifice or deception practiced to cheat, deceive or circumvent another to his injury ' ", or " ' Any act, omission or concealment that involves a breach of duty, trust or confidence ' ". In *Matter of Reiffeld* we find an " omission " of a breach of trust, which more nearly approaches the more modern accepted interpretation of the term. In *Hennequin* v. *Clews* (77 N. Y. 427, 429) the court distinguishes between an active express fraud from one implied from an unjustifiable or illegal act. In *American Credit Ind. Co.* v. *Wimpfheimer* (14 App. Div. 498) the court holds that fraudulent suppression of a material fact may constitute a fraud. However, the decision does not go so far as to hold that gross neglect in obtaining information constitutes a fraud. *Gardner* v. *Heartt* (3 Denio 232, 236) holds that to constitute fraud the mind must concur with the act, that the act must be done designedly and knowingly. Later we find actual distinguished from constructive fraud, the latter requiring no positive dishonesty of purpose. (*Forker* v. *Brown,* 10 Misc. 161.) Thus we find fraud as requiring deceit, trickery and moral turpitude, an intent to defraud, gradually growing into a wider sphere to include gross negligence. However, fraud will not be presumed, it must be proven. (37 C. J. S., Fraud, § 94, p. 400.)

The opinion of Judge Cardozo in Ultramares Corp. v. Touche (255 N. Y. 170) clarifies the present law as pertaining to liability of a paid agency furnishing a financial report. In the cited case, defendant, an accounting firm, was employed by Fred Stern & Co. to prepare and certify a balance sheet. The balance sheet, when delivered, indicated a net worth of over one million dollars. Relying upon the condition of the Stern Corporation, as reflected by the balance sheet, plaintiff, a factor, advanced large sums of money. Shortly thereafter the Stern Corporation was in bankruptcy. Plaintiff brought the action in tort, alleging negligence. On the trial an additional count based on fraud was inserted. Fraud, as there defined, includes a pretense of knowledge when knowledge of the truth of the assertion is lacking. Even the opinion of an expert, the court there holds, may be found to be fraudulent in event the grounds supporting the opinion are so weak as to lead to the conclusion there is no genuine belief back of it. The court there held that a report issued for a consideration does not exonerate the author from liability if such author has been so negligent as to justify a finding that the author " had no genuine belief in its adequacy, for that again is fraud." (P. 189.)

The authority chiefly relied upon by defendant in the instant motion is Xiques v. Bradstreet Co. (70 Hun 334). While holding that all that can be demanded of a concern furnishing credit information is that it shall make due and diligent inquiries, and furnish the results to its customers, still the decision holds that such a defendant can be held liable for the consequences of misinformation in event it is so grossly negligent in acquiring or communicating the information that " its conduct in effect amounts to a fraud." (P. 343.)

It would be difficult to contemplate a state of facts where examination of a defendant from a practical standpoint would exceed the necessity presented in the instant application. The plaintiff has the burden of making a case for the jury. The only person who knows what means were employed and what knowledge was acquired as to whether Wood had ever been adjudged a bankrupt is the defendant himself. The only person who knows whether reasonable grounds existed for the report is the defendant. No other person could have that knowledge. Neither by the process of reasonable elimination, nor by any other means, provided defendant did the work himself, could plaintiff be expected to prove his case. Neither a mind reader, nor claimed interpreter of the crystal ball would qualify to solve the knowledge defendant had when he submitted his report. Such was

locked up within the mind of the defendant. For the purpose of this motion the court must consider the allegations of the complaint as true.

Defendant's motion to vacate the notice for examination is denied. Defendant may be examined within reasonable limits.

As to defendant's motion to preclude for plaintiff's failure to furnish a further bill of particulars the court directs that within ten days after receipt of a copy of the minutes of defendant's examination plaintiff serve an additional and further bill of particulars, in default of which defendant's motion to preclude will be granted. On receipt of such bill an order may enter denying defendant's application.