**FIDELITY LEASING CORPORATION**

v.

**DUN & BRADSTREET, INC.**

Civ. A. No. 79–1134.

United States District Court,
E. D. Pennsylvania.

July 9, 1980.

David Sorin, Kessler & Sorin, Philadelphia, Pa., for plaintiff.

Joseph F. Roda, Kohn, Savett, Marion & Graff, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In this action based on diversity jurisdiction, Fidelity Leasing Corporation ("Fidelity") has brought suit against Dun & Bradstreet alleging that a business loss it incurred was the result of negligence, gross negligence, recklessness and breach of contract by the defendant. The defendant has moved for summary judgment.

### 1. Background

Plaintiff is a small Pennsylvania corporation that provides business loans and as a lessor leases business equipment on a lease-purchase basis. Defendant is a large mercantile agency (credit reporting agency) that contracts to supply credit information to subscribers. Plaintiff is a subscriber to defendant's services. In 1976 Fidelity began doing business with Brute of Pennsylvania, a manufacturer of business equipment. Brute occasionally referred potential customers for equipment leases to Fidelity. In late 1976 or early 1977 Brute contacted Fidelity about a possible equipment-lease arrangement with Intercontinental Consulting Corporation ("Intercontinental"). Perlmutter Deposition at 22. On plaintiff's request, Intercontinental sent it an uncertified financial report. Although the date is uncertain, in late December, 1976, or January, 1977, Fidelity contacted Dun & Bradstreet for a report on Intercontinental and was read a November 29, 1976 report over the phone. This report was then forwarded by mail to Fidelity. Defendant's report, submitted by it with the motion for summary judgment, reported substantially the same figures to the plaintiff that the latter had gotten directly from Intercontinental. Perlmutter Deposition at 43. Fidelity claims that on the basis of the Dun & Bradstreet report, sometime in February, 1977, Perlmutter Deposition at 33, it entered into a contract for $18,939.84 with Intercontinental for the lease-sale of high pressure steam cleaners. According to the complaint, Intercontinental made monthly payments until October, 1978, at which time all payments ceased and Fidelity sustained a loss of $11,442.82 on the contract.

Sometime after the contract between Fidelity and Intercontinental was entered into, Fidelity says it learned that the principals of Brute and Intercontinental were the same, operating under various aliases. Intercontinental, it was revealed, was a sham organization with no active business activities. The principals of Brute and Intercontinental were subsequently indicted, convicted and sentenced to jail terms. Perlmutter Deposition at 12–14. Fidelity, still owed nearly $12,000.00 has sued Dun & Bradstreet claiming tort and contract injuries.

■ On a motion for summary judgment, Rule 56(c), Fed.R.Civ.P., the defendant must show that on the record as submitted including the pleadings, depositions, answers to interrogatories, admissions and affidavits, there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. The record is liberally construed in favor of the party opposing the motion, and all doubts are resolved against the movant. The role of the court is only to determine whether there is an issue of fact to be decided, not to decide the factual issue. Indeed, the barest admissible evidence in opposition to the motion is a basis for denying the motion. *Remak v. Quinn*, 611 F.2d 36 (3d Cir. 1979).

## 2. Tort Claims

### A. Exculpatory Clauses

Fidelity has alleged that Dun & Bradstreet's negligence, gross negligence and recklessness have caused it to suffer a business loss. The subscription contract between the plaintiff and the defendant includes the following exculpatory provision:

Because of the large number of informational sources upon which Dun & Bradstreet, Inc. must reply [*sic*], and over which Dun & Bradstreet, Inc. has no control, the subscriber acknowledges that Dun & Bradstreet, Inc. does not and cannot guarantee the correctness or completeness of information furnished. Such information is to be considered a complete and current response according to Dun & Bradstreet, Inc.'s procedures. Such responses usually are not the product of independent investigation prompted by each subscriber inquiry. It is further understood by the subscriber that every decision to extend credit constitutes, in some degree or another, the assumption of a business risk, and that Dun & Bradstreet, Inc., in furnishing informa-

tion, does not and cannot underwrite the subscriber's risk, in any manner whatsoever. Dun & Bradstreet, Inc., therefore, shall not be liable for any loss or injury caused in whole or in part, either by its negligent acts of omission or commission or that of its officers, agents or employees or by contingencies beyond its control, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering information, including, but not limited to Responses to Inquiry, Reference Books, Apparel Trades Books and/or Directories.

Terms of Agreement, ¶ 3, Defendant's Exhibit A.

■ In this diversity suit Pennsylvania law is to be applied, and Pennsylvania courts have uniformly honored contract clauses where entered into freely, so long as they do not contravene public policy. *Galligan v. Arovitch*, 421 Pa. 301, 304, 219 A.2d 463, 465 (1966) ("[A] covenant against liability for acts of negligence is valid and enforceable when entered into by private individuals in furtherance of their personal affairs."); *Richard's 5 & 10, Inc. v. Brooks Harvey Realty Investors*, 264 Pa.Super. 384, 399 A.2d 1103 (1979). The contract between Fidelity and Dun & Bradstreet was entered into freely by parties concerning their private affairs and is not an adhesion contract.[1] Moreover, Lawrence Perlmutter, president and co-shareholder of Fidelity, responsible for the transactions with Dun & Bradstreet, is not an inexperienced business person.[2] I find the clause to be valid and enforceable, and the plaintiff therefore cannot assert a claim for damages based on defendant's negligence.

### B. Ordinary v. Gross Negligence

■ It is also a long-standing principle of Pennsylvania law that contracts that eliminate a party's liability for negligence, are

---

1. Pennsylvania courts have defined an adhesion contract as one in which one party " 'simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely,' " *i.e.*, where there is little or no relative bargaining equality between the parties. *Employers Liability As-*

*surance Corp. v. Greenville Business Men's Ass'n*, 423 Pa. 288, 292, 224 A.2d 620 (1966), *quoting Galligan v. Arovitch*, 421 Pa. at 304, 219 A.2d 463.

2. Perlmutter Deposition at 28–29.

not favored, *Crew v. Bradstreet Co.*, 134 Pa. 161, 169, 19 A. 500 (1890); *Fidelity Bank v. Tiernan*, 249 Pa.Super. 216, 375 A.2d 1320 (1977) (*citing Crew*), and therefore are strictly construed. *Galligan*, 421 Pa. at 303, 219 A.2d 463; *Crew v. Bradstreet Co., supra.* The Pennsylvania Supreme Court has instructed that contracts that limit liability for violation of otherwise legally protected rights "must spell out with the utmost particularity the intention of the parties." *Galligan*, 421 Pa. at 303, 219 A.2d at 465. The extent to which the Supreme Court of Pennsylvania will go in narrowly construing such clauses in a business context is apparent in *Crew v. Bradstreet Co.* In that case the clause exculpated the company's officers and agents for their negligence without specifically exculpating the company for its own negligence. The fault in that case was attributable to a company typist. On the theory that the negligence was therefore of the company itself, the Pennsylvania Supreme Court held that the exculpatory clause was inapplicable.

The exculpatory clause at issue in this case speaks to the *negligent* acts of the defendant or its officers, agents or employees. The question is whether this clause exculpates the defendant from acts of gross negligence or recklessness.

Since their inception before the twentieth century, credit information agencies such as Dun & Bradstreet have been sued by subscribers for business losses allegedly caused by the agency's negligence in the procuring and providing of business information. Indeed these mercantile agencies from the outset have attempted to limit their liability by exculpatory clauses in their contracts with subscribers, similar to the clause at issue.

In *Duncan v. Dun*, 8 F.Cas. 9 (C.C.E.D.Pa. 1879) (No. 4134), an early such case, the plaintiff conceded that the exculpatory clause in its contract with the defendant prevented suit for negligence, but argued that it had suffered a loss because of *gross* negligence, which it claimed was not covered by the contract provision. The court rejected the distinction, observing only that the defendant would be no less "anxious for protection against gross than against common negligence." *Id.* at 11. The subjective. intent of a party to a contract, however, is not necessarily reflective of the objective intent of both parties.[3]

On the other hand, several cases in state and federal courts against the Bradstreet Company, a credit information agency, have construed a similar exculpatory clause to protect the defendant against only ordinary negligence. *Xiques v. Bradstreet Co.*, 24 N.Y.S. 48, 53 (Sup.Ct.1893), *aff'd*, 141 N.Y. 605, 36 N.E. 740 (1894) (under the contract "the defendant cannot be held liable for the consequences of misinformation, unless it is so grossly negligent . . . its conduct in effect amounts to a fraud"); *Munro v. Bradstreet Co.*, 170 App.Div. 294, 155 N.Y.S. 833, 835 (Sup.Ct.1915) (the contract "relieves the defendant from errors and mistakes, but not . . . from gross mistakes or negligence"); *Hong Kong Export Credit Insurance Corp. v. Dun & Bradstreet*, 414 F.Supp. 153, 160 (S.D.N.Y.1975) (under the exculpatory clause "the defendant can't be held liable for what is called ordinary or simple negligence, but only for what is called gross negligence").

■ As noted above, exculpatory clauses are strictly construed against the party asserting the immunity. In addition, the burden to establish immunity is on the party asserting it and the defendant here has

---

**3.** Moreover, the court held in *Duncan* that:

"The contract which these parties entered into must be enforced as they made it. . . . One or the other must bear the risk involved in depending upon *agents scattered over the country, of whom neither could know much.*" *Id.* at 11 (emphasis added).

With the advent of technological advancement in communications, the reasoning in *Duncan*

may well not survive the passing of one hundred years since its holding.

The case arose before *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and it appears that the court was applying federal common law. As such the holding is not an application of Pennsylvania law and thus its strength as a precedent from this court is diminished.

offered no reason or precedent for construing the clause to cover gross negligence.[4] I find therefore that the exculpatory clause in the contract does not insulate the defendant from liability for gross negligence or recklessness.[5]

### C. Gross Negligence

In its complaint the plaintiff alleges that the defendant:

1. Failed to verify and corroborate the information supplied;

2. failed to examine and evaluate the information with reasonable care;

3. failed to obtain all relevant financial facts;

4. supplied plaintiff with inaccurate and misleading facts on which it relied;

5. failed to warn plaintiff of the misleading nature of the information supplied;

6. failed to recognize gross misrepresentations.[6]

At issue is whether any of the facts in support of these allegations could reasonably be found by a factfinder to constitute gross negligence.[7]

■ There is no universally accepted definition of gross negligence. As a general rule courts view it as a want of even scant care, but something less than intentional indifference to consequences of acts.[8] In a recent Pennsylvania case that did not involve a commercial contract such as in this case, gross negligence was defined as "a failure to perform a duty in reckless disregard of the consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness or wantonness." *Williams v. State Civil Service Comm'n*, 9 Pa.Cmwlth. 437, 306 A.2d 419, 422 (1973), *aff'd*, 457 Pa. 470, 327 A.2d 70 (1974).[9]

■ On some other record another plaintiff-subscriber might be able to make out a case that Dun & Bradstreet is grossly negligent in its general method of operation in gathering and communicating the information to subscribers. On this record, however, the plaintiff received a report that gave no rating to the company being examined, that stated clearly that a financial statement was "deferred" and in the absence of this financial information "condition and net worth cannot be currently determined," and that stated that full background information on the officers and directors of the investigated company was not available. Defendant's Exhibit B. In effect Dun & Bradstreet said in its report that its information on Intercontinental was limited. Thus the plaintiff cannot say that the defendant, having been grossly negligent in its method of operation, presented the plaintiff with misleading in-

---

4. The defendant has attached an unpublished Tennessee state court case, *The Day Companies v. Dun & Bradstreet, Inc.*, No. 64270 T.D. (Nov. 25, 1975), in which Dun & Bradstreet was sued on a contract containing the same exculpatory clause as in the suit at bar. The court granted defendant's motion for summary judgment, finding that on the facts as alleged there was no wilful, wanton or gross negligence. Defendant's Exhibit C. Although the Tennessee court granted Dun & Bradstreet's motion, the holding does not support an argument that gross negligence is included under the exculpatory clause.

5. Theoretical lines of distinction between gross negligence and wilful, wanton or reckless behavior are rarely drawn sharply, if drawn at all. See n.8 *infra* and accompanying text. Whether or not gross negligence is the same or something less than recklessness in Pennsylvania, if the exculpatory clause does not relieve the defendant from liability for gross negligence, the same would hold true for the allegation of recklessness.

6. Complaint ¶ 9 at 3. I presume the plaintiff is referring to misrepresentations by Intercontinental in its corporation filings with the Massachusetts State House and/or in communications with Dun & Bradstreet.

7. The burden is on the movant to show the absence of any genuine issue of fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970).

8. For a general discussion of degrees of negligence see W. Prosser, The Law of Torts 180–85 (4th ed. 1971).

9. The parties have cited no Pennsylvania cases, nor have I found any where gross negligence is defined in the context of business dealings.

formation. Rather, on this record, the plaintiff can only say the defendant did not try hard enough to get the information, or that the defendant did not sufficiently highlight the danger signals in the report, i. e., adequately warn the plaintiff of the limited value of the information. This states at best a claim for negligence, not gross negligence. To hold that this report with all of its express and implied caveats could reasonably be found to have been made and sent in reckless disregard of the consequences to a subscriber reading (and arguably relying on) it, would require on my part a reckless disregard of the facts.

Since I cannot find on this record that the plaintiff has alleged anything more than what might amount to negligence, I grant the defendant's motion for summary judgment on the gross negligence and recklessness claims.

### 3. Contract Claim

■ In the language of the exculpatory clause Dun & Bradstreet "does not and cannot guarantee the correctness or completeness of information furnished." The agreement goes on, however, to state that "[s]uch information is to be considered a complete and current response according to Dun & Bradstreet, Inc.'s procedures."

From the depositions taken of David Zabriskie [10] and Arthur H. Claypole, employees of Dun & Bradstreet, and of Lawrence B. Perlmutter, president and co-owner of Fidelity, it is clear that there are genuine issues of material fact on the contract claim.

Since the contract expressly refers to Dun & Bradstreet's procedures with no explication as to what these procedures are, there are unresolved questions as to the proper interpretation of the clause and of defendant's possible breach thereof. For example, with regard to the procedures for gathering of information, the plaintiff alleges that only one source was checked for the report on Intercontinental, belying the report statement that the "[l]atest figures available from *outside sources* are shown above" (emphasis added). In addition, plaintiff claims to be a "continuous service customer," entitled thereby to updates. Perlmutter Deposition at 34. It is unclear from the record and therefore not resolvable on a motion for summary judgment whether the defendant was obligated to follow up on the "deferred financial statement" and provide the plaintiff with further information (either a new report or a statement that nothing further could be determined at that time).

■ The defendant claims that the sentence in the report that states, "[d]ue to the nature of the operations, subject is not considered a general seeker of commercial credit," explains to a subscriber why there are no additional trade references. Zabriskie Deposition at 37–38. The plaintiff alleges (in the verified complaint and deposition) that the defendant did not adequately warn it of the shifting sand support for the report and thereby did not fulfill its obligations under the contract.[11]

With disputed questions such as these, summary judgment would be inappropriate on the contract claim and the defendant's motion on this claim accordingly is denied.

---

10. Although Zabriskie's deposition is unsigned, under Rule 30(e), Fed.R.Civ.P., with the appropriate affidavits it can be used as fully as if signed, absent a motion to suppress, duly made under Rule 32(d)(4).

11. The meaning of a contract is usually a question of fact. *See Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 80 (3d Cir. 1979) (In order to affirm a summary judgment order "we must determine that the Contract is so clear that it can be read only one way.")