KLEARTONE TRANSPARENT PRODUCTS CO., INC., Appellant, v
DUN & BRADSTREET, INC., Respondent.

Second Department, August 16, 1982

APPEARANCES OF COUNSEL

*Null & Null, P. C. (Miriam P. Null* and *William S. Null*
of counsel), for appellant.

*Thacher, Proffitt & Wood (Joan H. Hillenbrand* and
*Raymond S. Jackson, Jr.,* of counsel), for respondent.

OPINION OF THE COURT

LAZER, J.

Does an exculpatory clause which disclaims liability for
ordinary negligence protect a credit reporting agency
against its failure to supply its subscriber with information
concerning claims against the company examined which
are in collection by the collection arm of the credit agency?
The answer in this case is that a question of fact exists as to
whether the failure constituted gross negligence. The evi-
dence concerning the agency's policy not to report such
information raises a question as to whether it acted with
reckless disregard of the consequences.

Plaintiff, Kleartone Transparent Products Co., Inc.
(Kleartone), a subscriber to defendant Dun & Bradstreet's
credit reporting service, requested credit information con-

cerning Metropolitan Greeting Card, Inc. (Metropolitan), to whom it was contemplating selling its products on credit. On April 19, 1978, Dun & Bradstreet responded to the request by furnishing a report dated February 21, 1978, which gave Metropolitan a 3A3 rating[*] with a clear history, secured financing and a fair condition. The report also listed several accounts which Metropolitan was slow in paying. After reviewing the report, Kleartone contacted Metropolitan's bank and its major creditor, both of which gave favorable recommendations. The day after receiving the credit report, Kleartone issued sales terms to Metropolitan. The actual goods were shipped from May 31, 1978 through July 8, 1978.

On April 13, 1978, before issuance of the credit report on the 19th, one of Metropolitan's creditors, Clipper Express Co., had engaged Dun & Bradstreet's collection division to collect a past due debt in the amount of $14,533.20. By the end of May, 1978 (prior to Kleartone's shipments), the amount in collection totaled $19,800. No report showing these claims in collection was issued by the defendant. In August, 1978 (after Kleartone's shipments), another report was received by Kleartone, dated July 31, 1978, which removed Metropolitan's credit rating and mentioned that Metropolitan's slow payments were continuing. After Metropolitan failed to pay the $90,000 it owed to Kleartone, the latter referred the matter to Dun & Bradstreet for collection. Thirty thousand dollars of the debt was collected prior to Metropolitan's bankruptcy in January, 1979.

Kleartone then commenced this action, alleging that it had extended credit to Metropolitan in reliance upon defendant's report and that defendant willfully or negligently failed to inform it of the true facts regarding Metropolitan's financial situation. Dun & Bradstreet asserted as an affirmative defense that the action was barred by the following exculpatory clause in its contract with Kleartone: "Because of the large number of informational sources upon which Dun & Bradstreet, Inc. must rely, and over which Dun & Bradstreet, Inc. has no control, the subscriber acknowledges that Dun & Bradstreet, Inc. does

---

[*] The 3A3 rating refers to a financial strength of between $1 million and $10 million, but with only a fair composite credit appraisal.

not and cannot guarantee the correctness or completeness of information furnished. The information furnished in response to a subscriber inquiry is to be considered a complete and current response according to Dun & Bradstreet, Inc.'s procedures. Such responses usually are not the product of independent investigation prompted by each subscriber inquiry. It is further understood by the subscriber that every business decision, to some degree or another, represents the assumption of a risk, and that Dun & Bradstreet, Inc., in furnishing information, does not and cannot underwrite the subscriber's risk, in any manner whatsoever. Dun & Bradstreet, Inc., therefore, shall not be liable for any loss or injury caused in whole or in part, either by its negligent acts of omission or commission or that of its officers, agents or employees or by contingencies beyond its control, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering information, including, but not limited to Responses to Inquiry, Reference Books, Apparel Trades Books, and/or Directories."

Defendant then moved for summary judgment based on the exculpatory clause. In opposition, plaintiff's counsel relied on defendant's failure to issue a report revealing the collection claims against Metropolitan during the crucial May-July, 1978 period. In support of its position, plaintiff referred to the deposition of Robert Lieb, supervisor of defendant's Boston collection unit. Lieb had stated that Dun & Bradstreet does not reveal collections in its credit reports; that decision is made by the creditor involved. He further remarked that his collection information would not be transmitted to the credit reporting service until the collection account was referred to an attorney for legal action. In a letter to plaintiff's attorney, defendant's counsel claimed that Lieb's understanding of the communications between defendant's collection and reporting divisions did not reflect Dun & Bradstreet's procedures. Special Term granted the motion for summary judgment, holding that the failure to disclose that certain debts had been referred for collection does not rise to the level of gross negligence or willful conduct creating liability.

It is settled law that a clause absolving a party from its own negligence will be given effect, if not in violation of public policy (*Ciofalo v Vic Tanney Gyms,* 10 NY2d 294; *Della Corte v Incorporated Vil. of Williston Park,* 60 AD2d 639). However, clauses similar to the one at bar have been construed to protect the defendant only against ordinary negligence but not against gross negligence (*Fidelity Leasing Corp. v Dun & Bradstreet,* 494 F Supp 786; *Hong Kong Export Credit Ins. Corp. v Dun & Bradstreet,* 414 F Supp 153; *Corrigan v Dun & Bradstreet,* 91 F Supp 424; *Baumann v Bradstreet Co.,* 238 App Div 617; *Munro v. Bradstreet Co.,* 170 App Div 294; *Xiques v Bradstreet Co.,* 70 Hun 334, affd 141 NY 605). Moreover, such a clause should be strictly construed against the party asserting it as a defense (*Bradley Realty Corp. v State of New York,* 54 AD2d 1104). Gross negligence has been defined as a reckless disregard of the consequences, with an indifference to the rights of others (see *Matter of Jenson v Fletcher,* 277 App Div 454, affd 303 NY 639; *Denmark v New York Tel. Co.,* 97 Misc 2d 205; *Warren v New York Tel. Co.,* 70 Misc 2d 794).

The essential question is whether the evidentiary material presented was sufficient to raise an issue of fact as to gross negligence (see *Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276). The instant case, involving a failure to report collection information in Dun & Bradstreet's possession, is distinguishable from other cases where the credit agency merely failed to adequately investigate certain material (cf. *Fidelity Leasing Corp. v Dun & Bradstreet,* 494 F Supp 786, *supra; Baumann v Bradstreet Co.,* 238 App Div 617, *supra*). Not only was the information already in Dun & Bradstreet's possession when the first credit report was sent out, but it placed Dun & Bradstreet in what appears to be a conflict of interest. Indeed, Lieb's testimony supports an inference that Dun & Bradstreet had a conscious policy that its own collections not be revealed to its subscribers. Under these circumstances, it should be for the trier of fact to determine whether Dun & Bradstreet acted with indifference to the consequences of the failure to reveal these collections and whether such conduct was gross negligence.

Accordingly, the judgment should be reversed and the defendant's motion for summary judgment denied.

TITONE, J. P., MANGANO and GIBBONS, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered July 1, 1981, reversed, with $50 costs and disbursements, and defendant's motion for summary judgment is denied.