Thomas Robb v. The Pennsylvania Company for Insurance on Lives and Granting Annuities, Appellant.

*Banks and banking—Checks—Rubber stamp—Forgery.*

The mere procurement and possession of a rubber stamp, which makes a substantial facsimile of the depositor's bank signature, without the knowledge of the bank, does not, irrespective of the depositor's negligence, relieve the bank from liability for money drawn on checks made by a person who had unlawfully and clandestinely obtained possession of the stamp and used it in signing the checks. In such a case the question whether the depositor took proper precautions to prevent an unlawful use of stamp, is for the jury.

Argued May 4, 1898. Appeal, No. 79, Jan. T., 1897, by defendant, from judgment of Superior Court, Nov. T., 1896, No. 113, affirming judgment of C. P. No. 4, Phila. Co., Dec. T., 1894, No. 275. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. STERRETT, C. J., and WILLIAMS, J., dissent.

Appeal from Superior Court.

The facts appear from the report of the case in 3 Pa. Superior Ct. 254.

*Error assigned* was the judgment of the Superior Court.

*Frank P. Prichard* and *John G. Johnson*, for appellant.—If a depositor without the knowledge of the bank has a rubber stamp made which is a facsimile of his bank signature, and by means of that stamp a check is executed not distinguishable by ordinary inspection from genuine checks, and is paid by the bank in the exercise of due care and without any negligence, the loss must fall on the depositor: Bank of Kentucky v. Schuylkill Bank, 1 Parson's Eq. Cases, 248 ; Penna. R. R. Co.'s App., 86 Pa. 80 ; Ore v. Union Bank of Scotland, 29 Eng. Law & Eq. Rep. 1; Grant on Law of Bankers, 17; Morse on Banks and Banking (2d ed.), 331 ; Van Schaack on Bank Checks, 119; Hardy and Bros. v. Chesapeake Bank, 51 Md. 562; Young v. Grote, 4 Bing. 253 ; Garrard v. Haddan, 67 Pa. 82; Ingham v. Primrose, 7 C. B. N. S. 82; United States v. National Exchange Bank, 45 Fed. Rep. 163 ; Burnet-Woods Building & Saving Co. v. German Nat. Bank, 3 Ohio N. P. Cases, 84.

Even if the court did not err in leaving this question of negligence to the jury, the instructions given by the court were insufficient and erroneous, and laid down a wrong standard of negligence.

*Samuel Gustine Thompson*, for appellee, cited Belknap v. Bank, 100 Mass. 276 ; Brown v. Reed, 79 Pa. 370 ; Mackintosh v. Bank, 123 Mass. 393 ; D., L. & W. R. R. Co. v. Jones, 128 Pa. 308 ; Knox v. Eden Musee Co., 148 N. Y. 458.

OPINION BY MR. JUSTICE McCOLLUM, July 21, 1898 :

This suit was brought to recover the amount of a deposit made by the plaintiff with the defendant. It may be conceded for the purposes of this appeal that the deposit was paid out by the latter on checks purporting to be drawn by the former, and that the checks were forgeries. In the trial of the case in the court of common pleas and on the appeal to the Superior Court, the principal defense to the action was that inasmuch as the plaintiff had, without notice to the defendant, procured a rubber stamp which would make a facsimile of his signature, he must sustain the loss occasioned by an unauthorized use of the stamp by a person who had unlawfully and clandestinely obtained possession of it and, by means of it, perpetrated the forgeries on which the deposit in question was paid out by the defendant. The trial court being of the opinion that it was not unlawful for the plaintiff to have such a stamp produced for his own proper use and convenience refused to hold that his procurement of it without notice to the defendant constituted a bar to his suit for the money paid out on the forged checks. It held, however, that if the possession of the stamp by the forger of the checks was attributable in any degree to the negligence of the plaintiff in the care of it such negligence would relieve the defendant from responsibility for the loss, but that the question whether he failed in the performance of his duty in this respect was for the jury and determinable on the testimony affecting it. This view of the case resulted in a verdict for the plaintiff, and from the judgment entered thereon an appeal was taken to the Superior Court, which, in an opinion by its learned president, affirmed it. The case is now before us on the allowance of an appeal from the judgment of the Superior Court, and the defense made to the plaintiff's claim is simply a reiteration of

the defense made in the trial court, and on the appeal which resulted in the decision we are asked to reverse.

We cannot regard the production of the rubber stamp, on the plaintiff's request, as an unlawful act, nor can we assent to the claim that his procurement and possession of it without notice to the defendant relieved the latter from liability for the amount paid out on the forged checks. ' An act which is in and by itself entirely lawful, and which had no relation to the plaintiff's deposit with the defendant, did not impose upon the former the duty of notifying the latter of the performance of it, and if such a duty was not created by the plaintiff's procurement of the stamp, the loss occasioned by the use of it in the perpetration of the forgeries did not necessarily fall upon him. If, however, the forger obtained possession of the stamp through the negligence of the plaintiff, the responsibility for the loss occasioned by the forgeries would not rest upon the defendant if its cashier exercised due care in the inspection of the checks. It is needless to inquire on this appeal whether such care was exercised by the cashier, because the question is not raised by the assignments. The principal questions considered in the court of common pleas and in the Superior Court were whether the plaintiff's possession of the stamp without negligence in the care of it, and without notice to the defendant that he had it, relieved the latter from liability for the money paid out on the forged checks and, if it did not, whether the evidence in the case was sufficient to authorize a finding by the jury that the plaintiff as owner and custodian of the stamp had taken proper precautions to prevent an unlawful appropriation or use of it. It seems to us that these questions were rightly determined by the courts referred to, and that the reasons given for the conclusions arrived at by them were sound. The clear, concise and convincing opinion of the learned president of the Superior Court fairly includes and disposes of the material questions in the case, and upon it we unhesitatingly rest an affirmance of the judgment.

The fourth assignment alleges error in the instructions to the jury on the question of negligence, but a careful consideration of the charge has satisfied us that there is no error in it.

Judgment affirmed.

WILLIAMS, J., dissenting:

I dissent earnestly from this judgment, and from the reasons given in support of it in the opinion just filed. It puts an additional burden upon the defendant bank not resulting from the commercial contract between it and its depositor. When an account is opened at a bank by the deposit of money the depositor leaves his genuine signature with the banker for his guidance and protection in the payment of checks. When checks are presented bearing this signature they must not be refused, but if the signature is a forgery, no matter how skillfully it is done or how difficult of detection, they must not be paid. The contract which the commercial law raises upon the deposit of money with a banker, is that the deposit shall be paid out only to the depositor or his order. Payment upon a forged check is therefore no payment and in no way affects the depositor. But if the depositor executes a check and for any reason leaves it on his table where it is found by another, who fills it up, presents it at bank and receives payment upon it, this is a good payment by the bank, and the loss is that of the depositor for the check was signed by him. If instead of leaving his check upon the table the drawer had deposited it in a drawer within his safe, locked the safe, and put the key away in a box in his office precisely as Mr. Robb did with his stamp, nevertheless if a clerk or employee had taken the key from the box, unlocked the safe, abstracted the check and used it for his own benefit, its payment by the bank would have bound the depositor. His loss would have been due not to the failure of the banker to distinguish his genuine signature but to the crime of his employee who had obtained it surreptitiously. One of two innocent persons must suffer because of the payment of the check, and the law determines that the loss shall fall upon him whose act or omission made the loss possible. If the depositor had not signed his check and left it where it was possible for a criminal to appropriate it, palpably the loss could not have happened. This principle rules the case now before us. It is conceded that Mr. Robb caused the stamp to be made with which this check was executed. He says he only intended to use it for a particular purpose, but it is perfectly apparent that he intended his signature produced by this stamp should be recognized as his by the friends and acquaintances who should receive it, as it certainly would be.

The signatures made by it as they are presented to us in the paper-books, when placed by the side of admittedly genuine signatures are indistinguishable from them. Now this stamp belonged to him, was made under his direction, and for his use. It was intended for the rapid production of his signature. It was in his possession. He was bound to take care of it as safely as of his own signature made by himself with his own hand. He was bound to do this at his peril. There is no question of reasonable or sufficient care in the case. As with the signed check so with this stamp signature. When he put it in his safe and left the key where it was possible for any one to get it and so gain admission to the safe, he exposed himself to the loss that might follow, and that loss is his. He seeks in this action to put his own proper loss upon the bank that paid the checks by alleging that the checks were forged. But they were not forged. The signature was his. He prepared it. All that can be said is that he did not affix it to the checks. But he had prepared it so that any one could affix it to a check or any other paper and when so affixed it was absolutely impossible to tell that it had not been done by him. There would be some justification for his claim upon the bank if he had advised the banker that he had prepared such a signature that might by a possibility be clandestinely gotten from his possession, and given him an impression made by it and pointed out, if he could have done so, how it might be distinguished from his signature as made by a pen, but he did nothing of the kind. If the bank is not protected by his signature made by means of his own private stamp, if they are bound at their peril to know and discriminate between his signature made with his pen and that made with his private stamp, then he has by the use of the stamp very greatly increased the responsibility and peril of the banker without so much as giving him notice or affording the slightest intimation of the necessity for additional vigilance in scrutinizing checks purporting to bear his signature. Upon every rule of commercial law and upon every consideration of equity and good conscience, the judgment entered in the court below in this case should be reversed and judgment should be entered here in favor of the defendant.

STERRETT, C. J., concurring:

I fully concur in the foregoing dissenting opinion.