## CUMIS INSURANCE SOCIETY, INC.

### v.

### GIRARD BANK.

#### Civ. A. No. 80–2038.

United States District Court, E. D. Pennsylvania.

Aug. 31, 1981.

As Amended Sept. 8, 1981.

S. Gordon Elkins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Nolan Atkinson, Jr., Atkinson, Myers, Archie & Wallace, Philadelphia, Pa., for defendant.

## OPINION

JOHN MORGAN DAVIS, Senior District Judge.

### I. *Introduction*

▆▆▆ This is a diversity action brought by plaintiff insurer, as subrogee, to recover sums allegedly improperly debited from its insured's checking account by the defendant. Before the court are cross-motions for summary judgment pursuant to Fed.R. Civ.P. 56.[1] After reviewing the memoranda in regard to the respective motions and holding oral arguments, for the reasons which follow, defendant's motion for summary judgment will be denied while the plaintiff's motion for partial summary judgment will be granted.

The following facts are deemed uncontested. Frankford Arsenal Employees Federal Credit Union No. 1664 (hereinafter the Credit Union) opened an account with the defendant Girard Bank (hereinafter Girard) in October of 1977, and commenced using the account in January of 1978 pursuant to Girard's form printed documents of authorization. These documents, required by defendant before the opening of the account by the Credit Union, were approved by the Board of the Credit Union on October 18, 1977. One of the documents, entitled "certification of Resolution Authorizing a Facsimile Signature" (hereinafter Resolution) authorized Girard to honor checks when "... bearing or purporting to bear the facsimile signature or any signature or signatures resembling the facsimile specimens ..." of Viola Ferro or Edward Colgan "... with the same effect as if the signature or signatures were manual signatures ...". Furthermore, the Resolution stated that "the company [Credit Union] agrees to indemnify and hold harmless the Bank ..." from any damages the Bank may suffer "... by reason of its acting upon the Resolution ...".

These terms are now at issue in the motions pending before the court as a result of

---

1. It is well settled that when considering whether a motion for summary judgment is proper, the Court must determine if there is a genuine issue "... of material fact which, if believed by the trier of fact, would justify a finding for the party opposing that judgment." *Wahl v. Rexnord, Inc.*, 624 F.2d 1169, 1181 (3rd Cir. 1980). Summary judgment may not be used to deprive a party of a full trial of genuine fact issues, but may be granted only where there are no factual issues to be tried. *Major's* *Furn. Mart v. Castle Credit Corp.*, 602 F.2d 538, 539 n.1 (3rd Cir. 1979); *Ettinger v. Johnson*, 556 F.2d 692, 696 (3d Cir. 1977); *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951). *See also, Marcus v. St. Paul Fire & Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1981); *Program Engineering v. Triangle Publications*, 634 F.2d 1188, 1189, 1192–93 (9th Cir. 1980); *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir. 1980).

a series of transactions occurring on or after September 14, 1979, when five checks were presented at various banking institutions in Puerto Rico, Miami, or Dallas. These checks were strikingly similar. Each bore an unauthorized, facsimile signature resembling the facsimile signature of Edward Colgan;[2] each was numbered check 01307; each was dated September 14, 1979, and each was made out for the amount of $20,000.00.[3]

These checks were accepted and processed by the various banks to which they were presented, and were systematically forwarded to Girard Bank for final processing. Girard paid the five checks and thereafter credited $100,000.00 against the Credit Union's account. According to Girard's account reconcilement list, which indicates when an account is charged for the amount of a given transaction, three $20,000.00 checks were paid on September 28, 1979, another $20,000 check was paid on October 5, 1979, and another check was paid on October 11, 1979. However, none of the checks had ever been issued by the Credit Union, and none of the named payees of the five checks were actually authorized as payees or were members of the Credit Union. It is not known, and for the purpose of deciding the present motions, not relevant, whether these payees were fictitious or actually existed.[4]

The Credit Union's checking account was the type in which an employee of Girard would reconcile the depositor's account before mailing out the monthly statement. It is at this point that the checks are physically inspected for the first time. The reconcilement is based upon an "issue" report, a

carbon copy from the Credit Union showing that a check had been written.

It was not until November 8, 1979, when the reconcilement of the Credit Union's account was undertaken for September, that the bank clerk noted that there were three checks without "issue," all for $20,000.00, and all with the same check number. As a result of these observations, the bank clerk notified her superior and called Edward Colgan, manager of the Credit Union. Mr. Colgan immediately went to Girard, and upon examination of the checks, advised the bank that the three checks, as well as two other checks which Girard had uncovered, each for $20,000.00, and each numbered 01307, had not been issued by the Credit Union. The following day, November 9, 1979, Mr. Colgan officially advised Girard in writing that the Credit Union had not issued the checks and requested that the $100,000.00 debited from the Credit Union's account be properly credited back to the account. This the bank refused to do. Because of Girard's refusal, the Credit Union called upon its insurance company, Cumis,[5] which paid the amount of the claim.

Plaintiff Cumis instituted this action against Girard contending that Girard has converted funds belonging to the Credit Union and breached the contract of deposit by refusing to repay the $100,000.00 sum debited from the Credit Union's account based upon the unauthorized signatures. Girard, on the other hand, steadfastly maintains that the Credit Union's own negligence contributed to the alleged forgeries.[6] Moreover, defendant bank asserts that the Credit Union is barred from making the

---

**2.** For the purpose of this motion, defendant concedes that the signatures in question are unauthorized forgeries. Def. Brief at p. 13.

**3.** Plaintiff vehemently argues that the aforementioned checks are counterfeit in that they are attempted duplications of an actual Credit Union check. Technically, of course, plaintiff is correct when he states that these checks are "technological mules" created by modern technology. Under Code analysis, however, the genuineness of the signatures is the determinative factor. " 'Counterfeit' has no meaning in this context [the Code] other than forged."

*MBTA Emp. Cr. Union v. Employers Mut. Liability Ins. Co. of Wis.*, 374 F.Supp. 1299, 1302 (D.Mass.1974).

**4.** See n.12, infra, and accompanying text.

**5.** Cumis Insurance Society, Inc., as the assignee and subrogee of the Frankford Arsenal Employees Federal Credit Union No. 1664, is the named plaintiff in this lawsuit.

**6.** This defense is viable under 13 Pa.C.S.A. § 4406.

instant claim for $100,000.00 by the very terms of the "certification of Resolution Authorizing a Facsimile Signature."

Based upon this Resolution, Girard contends: (1) the facsimile signature on the alleged forged checks resemble the authorized facsimile signature, (2) the Credit Union is precluded from denying the authenticity of the facsimile signature; and (3) the Credit Union agreed to indemnify Girard for any loss sustained as a result of its acting upon the Resolution. Accordingly, Girard requests that the plaintiff's complaint be dismissed.

Plaintiff's position is that the "form" Resolution provides Girard no defense against plaintiff's claim for reimbursement. It argues that since it states only that facsimiles are to be treated the same as if they were manual signatures, and under Pennsylvania law, a bank is liable to the depositor when it pays out funds on the basis of an unauthorized signature. Furthermore, as an exculpatory clause, the plaintiff asserts that: (1) the clause is a contract of adhesion; (2) it is void since it violates public policy, and; (3) it violates the mandate of the Pennsylvania Commercial Code.

II. *Liability for Unauthorized Signatures*

Article Four[7] of the Pennsylvania Commercial Code (hereinafter the Code) is devoted to Bank Deposits and Collections, and in conjunction with Article Three,[8] governs the duties and liabilities of the parties in this case. Section 4401(a) of the Code states the general rule as to when a bank may lawfully charge the account of its customer. In pertinent part, it provides that "... a bank may charge against his [the customer's] account any item which is otherwise properly payable...." 13 Pa.C.S.C. § 4401(a). Section 3404 of the Code, however, prescribes the legal effect of unauthorized signatures stating that "[a]ny unauthorized signature[9] is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it." 13 Pa.C.S.A. § 3404. The case law is clear that pursuant to Section 3404 an instrument containing a forged or unauthorized signature is not "properly payable" within the meaning of Section 4401. *Perini Corp. v. First Nat. Bank of Habersham County*, 553 F.2d 398, 403–04 (5th Cir.), reh. den., 557 F.2d 823 (1977); *Winkie v. Heritage Bank of Whitefish Bay*, 99 Wis.2d 616, 299 N.W.2d 829, 833 (1981); *Hardex-Steubenville Corp. v. Western Pennsylvania Nat. Bank*, 446 Pa. 446, 449, 285 A.2d 874, 876 (1971).[10] Together the foregoing sections of the Code codify the pre-UCC view that a bank's duty to its customer rests upon an implied contract to honor a depositor's checks which bear genuine signatures. Hence, in honoring a forged check the bank is deemed to have used its own money not the depositor's, and is liable on the contract of deposit to recredit its customer's account.[11] See *O'Malley*, Common Check

---

7. 13 Pa.C.S.A. § 4101–4504 (1980).

8. 13 Pa.C.S.A. § 3101–3805 (1980) formerly Pa. Stat.Ann. 12A § 3–101—3–805 (1970) deals with Commercial Paper and applies by virtue of 13 Pa.C.S.A. § 4102. The instruments in this case meet the negotiability requirements set forth in 13 Pa.C.S.A. § 3104.

9. Section 1201 of the Code provides:
 "Unauthorized" signature or endorsement means one made without actual, implied or apparent authority and includes a forgery.

10. See also, *Brighton, Inc. v. Colonial First Nat. Bank*, 176 N.J.Super. 101, 422 A.2d 433, 438 (1980), petition for cert. granted, 85 N.J. 500, 427 A.2d 587 (1981); *North Carolina Nat. Bank v. Hammond*, 298 N.C. 703, 260 S.E.2d 617, 622 n.1 (1979); *Fireman's Fund Ins. v. Sec. Pac. Nat. Bank*, 85 Cal.App.3d 797, 149 Cal.Rptr.

883, 889 n.5 (1978); *Taylor v. Equitable Trust Co.*, 269 Md. 149, 304 A.2d 838, 842 (1973); J. White and R. Summers, Uniform Commercial Code 559 (1972).

11. The plaintiff asserts two distinct causes of action: (1) conversion, and (2) breach of contract. Insofar as plaintiff's claim for conversion relates to the defendant's honoring an instrument which contained the unauthorized signature of the drawer, it is dismissed. Under Pennsylvania law, it is the breach of contract between the customer and the bank which forms the basis of a cause of action to recover sums paid out on checks bearing a forged drawer's signature. *Hardey-Steubenville Corp. v. Western Pennsylvania Nat. Bank*, supra, 446 Pa. at 449–50, 285 A.2d at 876. See also, *Weiner v. The Pennsylvania Co., etc.*, 160 Pa.Super. 320, 321, 51 A.2d 385, 386 (1947); *Transameri-*

Frauds and the Uniform Commercial Code, 23 Rutgers L.Rev. 189, 195 n.38 (1969) (citing *Grubnau v. Centennial Nat'l Bank*, 279 Pa. 501, 504, 124 A. 142, 143 (1924)).

■ At this juncture, it must be noted that this is most probably a case of "double forgery,"[12] although the parties submit that they are unable to determine whether the payees of the instruments were indeed fictitious. The legal consequences of such double forgery cases was set forth in *Perini Corp. v. First Nat. Bank of Habersham County, supra*, 553 F.2d 398 (5th Cir. 1977). In *Perini*, the court concluded that the controlling defect was the unauthorized signature of the drawer. Id. at 412, 415–16; *Winkie, Inc. v. Heritage Bank of Whitefish Bay, supra*, 99 Wis.2d 616, 299 N.W.2d at 836 and 838; *Brighton, Inc. v. Colonial Nat. Bank, supra*, 179 N.J.Super. 101, 422 A.2d at 440. Consequently, the drawee could not be held liable in conversion[13] for paying out on the forged endorsements. *Perini Corp. v. First Nat. Bank of Habersham County, supra*, 553 F.2d at 412 and 415.[14] In the

instant action, therefore, liability must be assessed in accordance with the Code's disposition of items not "properly payable" due to the presence of the unauthorized signature of the drawer.[15]

■ As stated earlier, the payment on a forged drawer's signature violates the duty of the bank to charge its customers' accounts for only properly payable items. *Hardex-Steubenville Corp. v. Western Pennsylvania Nat. Bank, supra*, 446 Pa. at 449, 285 A.2d at 876; *Perini Corp. v. First Nat. Bank of Habersham County, supra*, 553 F.2d at 404. Because of this strict liability under the Code as between a drawee bank and a drawer customer, the loss must be assumed by the bank.[16] Thus, the defendant bank is liable for the wrongful payments under its contract with the depositor, the Credit Union, absent special circumstances. Under the Code scheme, the drawee bank can escape liability if the drawer is: (1) precluded from denying the validity of the signature (13 Pa.C.S.A. § 3404(a)); (2) negligent in allowing the forgery or negligent in not discovering it

ca *Ins. Co. v. United States Nat. Bank*, 276 Or. 945, 558 P.2d 328, 335 n.11 (1976). Plaintiff's reliance on *Lindsley v. First Nat. Bank of Phila.*, 325 Pa. 393, 190 A. 876 (1937) is misplaced because *Lindsley* involved merely a payee's right to recover against the drawee for conversion of a check bearing a forged endorsement. This right of action is codified in 13 Pa.C.S.A. § 3419(a)(3). See n.13, infra.

**12.** The type of double forgery involved in the case at bar is one in which both the drawer's signatures and the endorsements were unauthorized, precisely the type at issue in the *Perini* case. *Perini Corp. v. First Nat. Bank of Habersham County*, supra, 553 F.2d at 409 n.13; see also, *Baker*, the Perini Case: Double Forgery Revisited (Part I), 10 U.C.C.L.J. 309, 327 n.43 (1978). The Code establishes two schemes for allocation of forgery losses, depending on whether the signature in question is a forged endorsement or a forged drawer's signature. Id. at 317–320.

**13.** 13 Pa.C.S.A. § 3419(a)(3). I have previously stated that under Pennsylvania law no cause of action in common law conversion is stated by virtue of the defendant's payment of the instruments bearing unauthorized signatures of the drawer. See n.11, supra. Furthermore, even on a liberal reading of the complaint's conversion count, a statutory conversion action based

the defendant's payment on the forged endorsements is precluded under *Perini*.

**14.** For a discussion of this holding in *Perini*, see, Baker, The Perini Case: Double Forgery Revisited (Part II), 11 U.C.C.L.J. 411, 46–55 (1978).

**15.** See n.10, supra and accompanying text.

**16.** This absolute liability under the Code mirrors the common law in Pennsylvania. In *Weiner v. The Pennsylvania Co.*, 160 Pa.Super. 320, 51 A.2d 385 (1947) the court observed:

..., the bank may only pay upon the signature of the drawer, and if that be not genuine, i. e., forged, the bank, if it pays such check, is liable to the depositor, because it has no written order from the depositor. Even though the forgery of the drawer's signature is done so skillfully as to practically defy detection, such as an exact simulation, the bank is liable. Since this liability of the bank is therefore absolute, even though it exercises the highest possible degree of care, such liability is purely for breach of contract, i. e., the absence of the signed order of the depositor.

Id. at 321–22, 51 A.2d at 386. See also, *Interstate Hosiery Mills, Inc. v. First Nat. Bank of Lansdale*, 139 Pa.Super. 181, 186, 11 A.2d 537, 540 (1940).

(13 Pa.C.S.A. §§ 3406 and 4406);[17] (3) deemed to have ratified the unauthorized signature (13 Pa.C.S.A. § 3404(b)). See gen., *Hudak and Miller,* Bad Checks: The Effect of the Uniform Commercial Code, 10 U.C.C.L.J. 3, 12 (1977). It is the defendant's contention in substance that the plaintiff, as subrogee, is precluded from denying the validity of the unauthorized signature because the Resolution varies the normal contract relationship between the defendant bank and the Credit Union by shifting the risk of loss for unauthorized signatures to the customer. Thus, defendant asserts that the Resolution provides it with a complete defense for a loss arising from the instant forgeries.[18] For the reasons which follow, the court disagrees.

### III. *Legal Effect of the Resolution*

 An examination of the interrelated Code sections dealing with commercial paper and banking reveals an integrated scheme of primary and secondary liability in forged signature cases.[19] The legal consequence of the Resolution in the case sub judice must be resolved in light of this scheme. As an exculpatory agreement which divests the defendant bank from its primary liability, the Resolution fails to achieve its intended effect because of its inherent ambiguity. Pennsylvania law establishes certain rules of construction which must be followed to alter existing legal relationships:

> "An agreement or instrument which reduces legal rights which would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties."

*Galligan v. Arovitch,* 421 Pa. 301, 303, 219 A.2d 463, 465 (1966).[20] This doctrine of

---

**17.** Section 3406 "... relates to the maker's conduct before the fact of forgery, whereas § 4–406(1) [UCC] relates to the maker's conduct afterwards." *Hardex-Steubenville Corp., Inc. v. Western Pennsylvania Nat. Bank, supra,* 446 Pa. at 456, 285 A.2d at 877. Both sections, however, do not operate to discharge the bank from liability if the bank itself fails to exercise ordinary care in paying the item. Id. at 452, 456, 285 A.2d at 877. See 13 Pa.C.S.A. 3406 (payment must be "in accordance with the reasonable commercial standards ... of the drawee."); 13 Pa.C.S.A. 4406(c). The bank's duty of ordinary care is implicit in the contract relationship. *Bank of So. Md. v. Robertson's Crab House,* 39 Md.App. 707, 389 A.2d 388, 392 (1978). The Code, thus, proposes that the bank is primarily liable when it pays out on a forged drawer's signature because it is charged with the absolute duty of knowing and recognizing the signatures of its drawer-depositor. *West Penn. Admin., Inc. v. Union Nat. Bank of Pitts.,* 233 Pa.Super. 311, 333, 335 A.2d 725, 735 (1975); see also, n.16, supra. The bank may shift liability on the drawer by proving that his negligent conduct caused the forgery loss. But the Code views the bank's duty to use ordinary care in paying out on an instrument as paramount, and excuses drawer negligence when the bank is also at fault.

**18.** See Defendant's Brief at 16; Reply Brief at 21.

**19.** See n.17 supra, and accompanying text.

**20.** With respect to exculpation from negligent acts, the Pennsylvania Supreme Court set forth the standards of interpretation as follows:

Such standards are: (1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law (*Galligan v. Arovitch, supra,* 421 Pa. p. 303, 219 A.2d 463; *Crew v. Bradstreet Co.,* 134 Pa. 161, 169, 19 A. 500 (1890)); (2) such contracts "must spell out the intention of the parties with the greatest of particularity" (*Morton v. Ambridge Borough,* 375 Pa. 630, 635, 101 A.2d 661 (1954)) and show the *intent to release from liability* "*beyond doubt by express stipulation*" and "*[n]o inference from words of general import can establish it*" (*Perry v. Payne,* 217 Pa. 252, 262, 66 A. 553 (1907)); (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability (*Crew v. Bradstreet, supra,* 134 Pa. p. 169, 19 A. 500); (4) the burden to establish immunity from liability is upon the party who asserts such immunity (*Dilks v. Flohr Chevrolet, supra,* 411 Pa. p. 436, 192 A.2d 682).

*Employer's Liability Assurance Corp., Ltd. v. Greenville Businessmen's Ass'n,* 423 Pa. 288, 298–99, 224 A.2d 620, 623 (1966) (emphasis added). See also, *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1217 (3rd Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970) (provisions must "clearly and unequivocally spell out the intent to grant such immunity"); *Fidelity Leasing Corp. v. Dun & Bradstreet, Inc.,* 494 F.Supp. 786, 789 (E.D.Pa. 1980).

strict construction must be meticulously applied in cases such as this in which the strict liability of the bank for a forged signature is sought to be disclaimed. Cf., *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146, 150 (3d Cir. 1974) (agreement to hold harmless of any liability in connection with sale inadequate to exculpate defendant from strict liability claim). The language of Girard's Resolution states that Girard will honor checks "bearing or purporting to bear the facsimile signature or any signature or signatures resembling the facsimile specimens . . . with the same effect as if the signatures were manual signatures." The Resolution further advances that the Credit Union "agrees to indemnify and hold harmless the Bank . . ." from any damages "by reason of its acting upon the Resolution." On its face, the Resolution can be accorded varying meanings; therefore, it is ambiguous and must be construed with every intendment against the defendant bank, who seeks immunity from liability, *Galligan v. Arovitch, supra,* 421 Pa. at 303, 219 A.2d at 465. The language of the agreement that Girard will honor checks *"bearing* or *purporting "* to bear the facsimile signatures seems to suggest that the defendant was authorized to accept either the unauthorized use of the genuine facsimile stamp or a forged facsimile stamp. If the parties intended to shift the risk of loss for any unauthorized signature to the depositor, that intent is obscured. by the succeeding language which emphasizes that the facsimile signatures are to be treated with the same effect as manual signatures. This provision suggests that any facsimile signature will be regarded as merely a manual signature with its attendant legal attributes; thus, requiring the bank to bear the loss according to the Code due to the unauthorized signature. This construction, however, may render the subjective intent of the bank to avoid liability meaningless. But the subjective intent of the bank is not necessarily reflective of the objective intent of the parties to the contract. *Fidelity Leasing Corp. v. Dun & Bradstreet, Inc.,* supra, 494 F.Supp. at 789. Alternatively, the language can be construed to absolve the bank of liability only where there is an unauthorized use of the facsimile machine; not where facsimile signature is actually forged. *Compare Perini Corp. v. First Nat. Bank of Habersham County, supra,* 553 F.2d at 400.[21] "If there is any doubt as to the meaning of an exculpatory clause, the party seeking its protection cannot be said to have carried his burden." *Neville Chemical Co. v. Union Carbide Corp., supra,* 422 F.2d at 1219. The viability of conflicting plausible interpretations of the language at issue indicates that the defendant has failed to establish its immunity from liability. Hence, the Resolution must be interpreted in accordance with the general Code principles, and the defendant remains primarily liable for unauthorized non-authentic facsimile drawer's signatures subject to the rules governing the consequences of negligence between the parties.[22]

**21.** The agreement in *Perini* on this point is unequivocal. It stated that the bank would be entitled to honor and charge the customer for all checks "bearing or purporting to bear the facsimile signature . . . regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed . . .". Id. Substantially the same language was employed in *Transamerica Ins. Co. v. United States Nat. Bank,* 276 Or. 945, 558 P.2d 328, 332 (1976).

**22.** Furthermore, as plaintiff asserts, the Resolution at issue comes perilously close to violating the initial requirements of a valid exculpatory clause. Generally stated, such a contract is valid if:
(a) "it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State. . . ." (*Dilks v. Flohr Chevrolet,* 411 Pa. 425, 434, 192 A.2d 682, 687 (1963) and authorities therein cited); (b) "the contract is between persons relating entirely to their own private affairs" (*Dilks v. Flohr Chevrolet,* supra, pp. 433, 434, 192 A.2d 682, p. 687); (c) "each party is a free bargaining agent" and the clause is not in effect "a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely." (*Galligan v. Arovitch,* 421 Pa. 301, 304, 219 A.2d 463, 465 (1966)).
*Employer's Liab. Assur. Corp. v. Greenville Businessmen's Ass'n.*, supra, 423 Pa. at 291–92, 224 A.2d at 622–23. Accord, *Leidy v. Deseret Ent., Inc.,* 252 Pa.Super. 162, 167–68, 381 A.2d 164, 167 (1977). In view of the following dispo-

While I have held that the Resolution does not by its language exonerate the defendant from liability in this action,—more fundamental and persuasive policy reasons preclude any bank from shifting the loss to the depositor under these circumstances. The Pennsylvania courts have been cognizant of the needs of the public when faced with the superior bargaining power of the banking establishment. In *Phillips Home Furnishings, Inc. v. Continental Bank*, 231 Pa.Super. 174, 331 A.2d 840 (1974), rev'd on other grounds, 467 Pa. 43, 354 A.2d 542 (1976) (issue of exculpatory clause held not proper before Superior Court) the court held that as a matter of law a bank may not contractually absolve itself from all liability in connection with the use of a night depository facility. Id. 231 Pa.Super. at 183–84, 331 A.2d at 844. The court reasoned that the public interest involved in banking transactions required that the public policy of the state be fashioned to preclude the industry in general from contractually exculpating itself from the consequences of its own negligence or lack of good faith in the performance of any of its banking functions.

■ The import of *Phillips* is that the banking industry cannot shift responsibility for use of banking services solely to its customers at their risk. The defendant in case sub judice attempts exactly this type of loss shift by invoking Section 4103 of the Code.[23] The type and extent of variation of the Code provisions permitted by Section 4103, however, is expressly defined by that Section.[24] In *Phillips*, supra, the court unequivocally announced that Section 4103 "prevents a bank from disclaiming or limiting its liability for lack of good faith or failure to exercise ordinary care in connection with bank deposits or collections." *Phillips Home Furnishings, Inc. v. Continental Bank*, supra, 231 Pa.Super. at 183, 331 A.2d at 844. Accord, *Congress Financial Corp. v. Sterling-Coin-Op. Mach. Corp.*, 456 F.2d 451, 455–56 (3rd Cir. 1972); *Bank of So. Maryland v. Robertson's Crab House*, supra, 39 Md.App. 707, 389 A.2d at 392, n.5. Construed as the bank asserts,[25] the Resolution would have the effect of exculpating the bank from any liability regardless of its own negligence in paying the instruments bearing forged drawer signatures.[26] The Resolution, thus, would bar the drawer's assertion of the bank's lack of ordinary care or good faith to counteract the effect of its own negligence in shifting liability for the loss under the Code scheme. If the Resolution is interpreted in this manner, it does not define any permissible standard of care but exculpates the bank from liability for the lack of reasonable care implicit in the

sition of the motions at bar, I express no view as to the validity of the resolution under the foregoing authorities. I note, however, that factual issues inherent in the determination of the adhesion question preclude summary judgment in any event. *Taylor v. Costa Lines, Inc.*, 441 F.Supp. 783, 785 (E.D.Pa.1977).

**23.** 13 Pa.C.S.A. § 4103(a) provides:
 Variation by agreement.—The effect of the provisions of this division may be varied by agreement except that no agreement can disclaim the responsibility of a bank for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.
The general provision which applies to the entire code is to the same effect. See 13 Pa.C.S.A. § 1102(c).

**24.** See n.23 supra, and UCC § 4–103 comment 2 and § 1–102 comment 2.

**25.** See Def. Brief at 16; Def. Reply Brief at 21.

**26.** Girard argues that the plaintiff is precluded from asserting that any negligence on the defendant's part caused the loss since no negligence count is averred in the complaint. The duty of the bank to use ordinary care is implicit in the contract; therefore, it is not necessary to specifically plead a separate negligence count. See n.11, supra. Furthermore, viewing the plaintiff's complaint with the requisite liberality, see *Franklin Life Ins. Co. v. Bieniek*, 312 F.2d 365, 372 (3rd Cir. 1962), sufficient facts are alleged to raise an inference of negligence and lack of good faith on the part of the bank. See complaint at 7 and 10. Additional averments of negligence will be permitted by the court pursuant to Fed.R.Civ.P. 15(a).

contract of deposit. Accordingly, it is void under Sections 4103 and 1102 of the Code.[27]

Moreover, I have significant doubt as to the validity of any agreement such as the one at bar which seeks to abrogate the fundamental rules of liability for forged signatures which are embodied in the Code. As stated by Professors White and Summers "the drafters did not intend that the parties should avoid specific expressions of policy by utilizing these general rules [4–103]." J. White and R. Summers, Uniform Commercial Code, 654 n.16 (1972).[28] Under the Code, the interest in finality of commercial transactions dictates that the risk of loss in forged check cases be placed on the drawee. See *Perini Corp. v. First Nat. Bank of Habersham County*, 553 F.2d at 407–08. The harshness of this rule of strict liability is mitigated by the Code's negligence provisions which shift the risk of loss based on fault. This scheme of primary and secondary liability appropriately provides the bank with a statutory vehicle to shift the loss herein if the Credit Union failed to exercise ordinary care by misuse of the facsimile machine. The defendant, while pleading the Code's negligence rule as a defense, seeks to further insure against Code liability by contractually prescribing that the mere use of the facsimile machine is essentially negligence per se which absolves the bank notwithstanding its own lack of care. As heretofore stated, such a resolution does not set a standard of care within the meaning of Section 4103(a) but is merely an attempted exculpation from all liability. And to the extent that such an agreement renders the Code provisions for liability in forged signature cases a nullity, it conflicts with the policy set by the legislature of the Commonwealth.[29]

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted since the resolution strictly construed does not provide a bar under the facts of this case and, alternatively, the Resolution is void under Section 4103 of the Code.

27. *Perini Corp. v. First Nat. Bank of Habersham County*, 553 F.2d 398 (5th Cir. 1977) and *Wilmington Trust Co. v. Phoenix Steel Corp.*, 273 A.2d 266 (Del.1971) which are relied on by the defendant are not to the contrary. In *Perini*, supra, the plaintiff did not take issue with the drawee's position that the resolution in effect precluded any claim against it based on payment of checks with forged drawer's signatures. *Perini Corp.*, supra, 553 F.2d at 403. Thus, the court did not address the issue, except to merely cite Section 4103, of whether that section prohibits such an agreement. Id. at 405. Likewise, the court in *Wilmington Trust*, supra, did not deal with the effect of Section 4103 in this context. Furthermore, it must be noted that the court did not hold that the bank was completely absolved from liability assuming negligence on its part, but found nothing in the record which raised any issue of negligence. *Wilmington Trust Co. v. Phoenix Steel Corp.*, supra, 273 A.2d at 267.

28. It is noteworthy that the Code comment which explains the meaning of the phrase "precluded from denying it" in the context of Section 3404 does not refer to contractual modifications. The comments speak of only forms of estoppel and negligence which preclude the denial of an unauthorized signature. UCC § 3–404 comment 4.

29. Interestingly, *Robb v. Pennsylvania Co.*, 3 Pa.Super. 254 (1897), aff'd, 186 Pa. 456, 40 A. 969 (1898) is instructive. This case involved use of a rubber stamp which was a substantial facsimile of the plaintiff's bank signature. After unauthorized use of the stamp to forge his signature, the plaintiff brought an action to recover the amount of the deposit paid out by the defendant bank. Although there was no contract exculpating the bank from liability, the defendant argued that the use of the stamp without knowledge of the bank absolved the bank from any liability. 3 Pa.Super. at 259. The court found that assuming there was no negligence on the part of the plaintiff, the mere use of the rubber stamp cannot amount to negligence per se which would relieve the bank of its primary liability for the loss occasioned by payment on the forged drawer's signature. Id. at 262. Similarly, the Code prevents the defendant from automatically shifting the loss through a resolution disclaiming liability by virtue of Section 4103. Such an agreement does not set a reasonable standard of care. Furthermore, assuming the absence of negligence between the parties, the bank cannot rewrite the effect of the Code in the instant case.