In re LeRoy MOORE, Debtor.

LeRoy MOORE, Plaintiff,

v.

The PHILADELPHIA NATIONAL BANK and James J. O'Connell, Trustee, Defendants.

Bankruptcy No. 86–03229G.
Adv. No. 86–0894G.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 14, 1986.

Michael Donahue, Delaware County Legal Assistance, Chester, Pa., for debtor/plaintiff, LeRoy Moore.

Warren T. Pratt, Drinker Biddle & Reath, Philadelphia, Pa., for defendant, Philadelphia Nat. Bank.

James J. O'Connell, Philadelphia, Pa., trustee.

## OPINION AND ORDER

BRUCE FOX, Bankruptcy Judge:

The debtor, LeRoy Moore, initiated an adversary proceeding against Philadelphia National Bank, (PNB), and the standing chapter 13 trustee. Moore had claimed as exempt, under 11 U.S.C. § 522(b), all funds on deposit in his passbook account with PNB, and is now asserting that PNB permitted unauthorized withdrawals from his account in April and May 1986. The debtor seeks damages for the total amount so withdrawn, $1,532.00. PNB denies that there were any unauthorized withdrawals.

■ Before turning to the merits, I must address, briefly, the issue of jurisdiction. Although the pleadings place in question whether this matter is a core proceeding under 28 U.S.C. § 157(b)(1), at trial both parties consented to my entering a final binding decision pursuant to 28 U.S.C. § 158(b)(2). *See, e.g., Thomas v. Union Carbide Agr. Products Co.,* —— U.S. ——, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985). Therefore, this matter will be treated as if it were a core proceeding.

This dispute centers on three withdrawals from plaintiff's savings account, which may be listed as follows:

| April 1, 1986 | $1,032.00 | Marcus Hook Branch |
| April 3, 1986 | $ 300.00 | Marcus Hook Branch |
| May 12, 1986 | $ 200.00 | Brookhaven Branch |

Under the provisions of the Uniform Commercial Code, adopted in Pennsylvania, a bank may lawfully charge the accounts of its customers for any item which is properly payable. 13 Pa.C.S.A. § 4401(a). However, an unauthorized signature is inoperative against a customer's account unless the signature is ratified by the customer or the customer is precluded from denying it. 13 Pa.C.S.A. § 3404. *See Cumis Insurance Society, Inc. v. Girard Bank,* 522 F.Supp. 414 (E.D.Pa.1981). An "unauthorized signature" is defined to include a forgery. 13 Pa.C.S.A. § 1201.

■ The debtor maintains that the withdrawal slips honored by PNB on the three dates mentioned above contain unauthorized signatures while PNB believes the signatures to be valid. Neither party has called into question the activities of the other, insofar as U.C.C. sections 3–406 or 4–406 are concerned. That is, the debtor does not raise in issue the conduct of the bank under § 4406(c) and the bank does not place in question the conduct of the debtor either before or after these withdrawals. *See generally Cumis Insurance Society, Inc.,* 522 F.Supp. at 420 n. 17. Therefore, the only issue before me is whether the signatures on the three withdrawal slips were forged. If the signatures were forged, then PNB breached its contract to the debtor and the debtor is entitled to recover his damages. *Id.* at 419, n. 11, 13;

*Thomas v. First National Bank of Scranton,* 376 Pa. 181, 101 A.2d 910 (1954).

The testimony in this matter was extremely conflicting, and neither party offered expert testimony concerning the legitimacy of the signatures. Mr. Moore[1] testified emphatically that he never withdrew any funds from PNB on the dates in question nor signed the withdrawal slips, and was never in the Marcus Hook branch office prior to late May or June 1986, when he went there solely to meet with bank employees after reporting unauthorized withdrawals from his account. He further stated that he had lost his passbook in late March 1986, implying that whoever found the passbook had utilized it in making these withdrawals. He also testified how the three withdrawal slips were completed in ways different from those normally utilized by him. Upon cross examination, he admitted that he had originally informed defendant that there was a further unauthorized withdrawal, which he later conceded was in fact a proper withdrawal.

Under Pennsylvania law, which governs this proceeding this testimony was sufficient to establish a *prima facie* case for plaintiff. *See, e.g., Levin v. Northwestern National Bank,* 154 Pa.Super. 94, 35 A.2d 769 (1944); *Suny v. First Pennsylvania Banking & Trust Co.,* 66 D. & C.2d 762 (C.P.Phila.1973).

█ Defendant then offered testimony from three witnesses. The first witness was a teller at the Marcus Hook branch who testified that Marcus Hook was a very small branch office and identified the debtor as the individual who withdrew funds from that branch on April 1 and April 3, 1986. She claimed to have been the actual teller in question on April 1 and remembered speaking to the debtor and verifying his signature against the ultrafiche reproduction of the signature card for this account. Moreover, she remembered the debtor demanding a cash withdrawal despite her suggestion to the contrary, and that he returned two days later to withdraw additional funds from a teller near to her. She also claimed she knew the debtor from his visits to this branch prior to April 1, 1986.

The second witness was a bank investigator who identified a photograph of the debtor in the Brookhaven branch on May 12, taken three minutes before the withdrawal slip in question was time stamped.[2] The third witness was the Operations Manager of the Brookhaven branch who stated that he remembered Mr. Moore's visit to the branch on May 12, 1986, that Mr. Moore had been a customer at that branch for years, and that he, the Operations Manager, personally approved the withdrawal on May 12, 1986. Two of the bank witnesses admitted that they never requested identification, other than the passbook, from the person making the withdrawal.

Under Pennsylvania law, it is the bank which has the burden of establishing that these withdrawal slips were not forged. *Levin v. Northwestern National Bank; Suny v. First Pennsylvania Banking Trust Co.* However, after hearing the witnesses and examining the exhibits, I must conclude that the bank has sustained its burden, although I do not reach this conclusion easily.

For the most part, I find the testimony of the bank's two eyewitnesses credible and the photographic evidence does place the debtor at the Brookhaven branch just prior to the May 12 withdrawal. I am troubled by the statement that no identification in addition to the passbook was requested, (particularly for a large cash withdrawal) because this customer was known to bank employees, yet those employees went to the trouble of authenticating his signature. On the other hand, plaintiff's testimony was confused on some points and his memory appeared faulty. For example, the

---

1. Plaintiff is a 67 year old individual with a 6th grade education. His income consists of social security benefits.

2. He also explained that the Marcus Hook branch did not, unlike Brookhaven, have a camera system which automatically recorded all transactions.

bank claimed that Mr. Moore admitted to making the May 12 withdrawal after being confronted with the photograph, while at trial his denial of this admission was less than clear.

On balance, I find the weight of the evidence favors the position of PNB that the plaintiff did, in fact, withdraw the funds in question himself. Judgment will be entered on behalf of defendant.