Elmer E. GRESS and Margaret Gress

v.

PNC BANK, NATIONAL ASSOCIATION.

v.

Lewis Kates, P.C., a/k/a Law Offices of Lewis Kates

Civil Action No. 99–2028.

United States District Court, E.D. Pennsylvania.

March 30, 2000.

Michael B.L. Hepps, Law Offices of Michael B.L. Hepps, Philadelphia, PA, for Elmer E. Gress, Margaret Gress.

Susan Verbonitz, Weir & Partners, LLP, Philadelphia, PA, for PNC Bank.

Joseph C. Bedwick, Cozen and O'Connor, the Atrium, Philadelphia, PA, for Lewis Kates.

## MEMORANDUM

POLLAK, District Judge.

This diversity case concerns a $93,506.45 treasurer's check that was allegedly issued by a predecessor of PNC Bank ("PNC"), whose principal place of business is Pennsylvania, and was made payable to Elmer and Margaret Gress, who reside in New York. The complaint presents six counts, which, in turn, present two basic allegations: first, that PNC wrongfully retains or has already wrongfully paid a third party the contested $93,506.45, and second, that PNC wrongfully cannot produce any record of the check's payment or nonpayment.

PNC, in turn, has moved to dismiss counts two through six in plaintiffs' complaint, whose details will be discussed herein. In deciding this motion, it is well-

established that "we must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998) (citations omitted) ("A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint").

**Facts as Alleged:**

According to the complaint, the money in dispute stems from a previous lawsuit's settlement, of which plaintiffs' former attorney, Lewis Kates, placed $500,000 in an escrow money market account. The Gresses allegedly requested these funds from Mr. Kates many times, and after having had no success, plaintiffs hired a second attorney to investigate and pursue the settlement's final distribution. In the course of this investigation, plaintiffs received a photocopy of the front side of the check at issue here, a treasurer's check for $93,506.45 issued by Continental/Midlantic Bank to Elmer and Margaret Gress. Plaintiffs claim that the check was delivered to Mr. Kates, but they claim never to have negotiated or received the check or any of its proceeds. When plaintiffs requested that PNC pay them the amount specified on the check, PNC refused, claiming that it did not possess the check and was unable to track its possible payment because a warehouse fire had destroyed the bank's relevant records.

Based on these factual claims, the complaint advances six legal counts. First, plaintiffs allege that PNC breached an im-

1. This claim is not presently in dispute.

2. The issue underlying this displacement controversy is how the accrual date should be calculated in this case. The accrual date will be discussed further in the next section.

3. Defendant's citation to *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, (3d Cir.1995), *Cumis Ins. Society,*

plicit contract by wrongfully keeping or releasing funds from their escrow account.[1] Second, plaintiffs argue that PNC committed common law conversion by presently refusing to pay them the money or having previously paid the money to someone else. Third, plaintiffs claim that PNC's actions violated U.C.C. § 3240, which forbids conversion of negotiable instruments. Fourth, plaintiffs contend that PNC negligently failed to verify the check's signature/indorsement when a third party presumably cashed the check. Fifth, plaintiffs assert that PNC negligently failed to keep records as to the check. And finally, plaintiffs seek to bring a private cause of action to enforce 12 U.S.C. § 1829(c) and 31 C.F.R. § 103.33, which regulate the maintenance of banking records.

**Displacement of Common Law Torts by § 3420:**

■ Pennsylvania's version of the Uniform Commercial Code provides that:

Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa. Cons.Stat. Ann. § 1103. In this case, the parties dispute whether the Uniform Commercial Code displaces plaintiffs' allegations of common law conversion under Count Two or of common law negligence under Count Four.[2] Although Pennsylvania's courts apparently have not spoken on the issue,[3] we predict that

*Inc. v. Girard Bank*, 522 F.Supp. 414 (E.D.Pa. 1981)), and *Monaghan v. Provident Nat'l Bank*, 346 Pa.Super. 163, 499 A.2d 362 (1985), does not significantly advance matters. *Universal Premium* makes no holding as to displacement of any kind, and the issue in *Monaghan* and *Cumis* seems to rest on the displacement of tort remedies by contract

Pennsylvania's Supreme Court would hold that common law claims like the Gresses' have been displaced by 13 Pa. Cons.Stat. Ann. § 3420 insofar as they relate to conversion of a negotiable instrument. § 3420 states, in relevant part:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than negotiation, from a person who is entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

To support their claims under Counts Two and Four, the Gresses primarily rely on allegations that PNC wrongfully paid the treasurer's check to some third party on the basis of a forged signature or indorsement. Such allegations, however, seem squarely covered by the terms of § 3420, which proscribes payment to "a person not entitled to enforce the instrument or receive payment." We agree with the authorities cited by PNC, which have held that the U.C.C. intends to produce inter-jurisdictional uniformity as to the commercial activities it governs and, further, that displacing common law tort liability with respect to such activities is vital to that project. *See Miller–Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 662 (Tex.App.1996) (finding conversion of negotiable instruments to have been displaced by the U.C.C.); *Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051, 46 Cal.Rptr.2d 309, 318 (1995) (finding conversion and negligence actions concerning forged checks' payment to have been so displaced); 1 Barkley Clark &

Barbara Clark, *The Law of Bank Deposits, Collections, and Credit Cards* ¶ 1.02[2] (rev.ed.1999); *see also D & G Equipment Co., Inc. v. First National Bank*, 764 F.2d 950, 957 n. 4 (3d Cir.1985) (noting that the U.C.C.'s conversion provision subsumed common law conversion).

Although the text of § 3420 only explicitly addresses conversion and does not mention negligence, we hold that § 3420 nonetheless displaces any negligence actions that are based on wrongfully paying a negotiable instrument to "a person not entitled to enforce the instrument or receive payment." The effect of § 3420 for displacement purposes is not confined to any particular legal theory; instead, its intended purpose is to provide exclusive regulations to govern the unauthorized payment of negotiable instruments. Thus, since Counts Two and Four allege that PNC wrongfully paid the disputed treasurer's check to someone other than the Gresses,[4] these counts are dismissed with prejudice.

### Statute of Limitations and § 3420:

██ Under 13 Pa. Cons.Stat. Ann. § 3118(g), statutory conversion claims must be brought within three years of the date of accrual. On this basis, PNC claims that Count Three of plaintiffs' complaint should be dismissed because the complaint was not filed until April 22, 1999, while the treasurer's check at issue is dated November 4, 1993. Plaintiffs respond with two arguments. First, they claim that the date of accrual should be the date that they discovered PNC's alleged misconduct.[5] In *Menichini v. Grant*, 995 F.2d 1224 (3d Cir.1993), however, the Third Circuit firmly rejected the "discovery rule" in the con-

---

remedies, rather than on displacement of tort remedies by the U.C.C.

**4.** Count Two of the complaint states that PNC committed conversion simply "in refusing to pay the funds to the named payees." Complaint ¶ 26. From the current complaint, as supported by arguments contained in the plaintiffs' brief, this "refusal" does not appear to state a theory of conversion independent of

PNC's wrongfully paying the treasurer's check. However, it should be evidence that the U.C.C. would not necessarily displace tort claims that did not directly rely upon the mispayment of negotiable instruments.

**5.** Both parties appear to presume, for purposes of this motion, that such discovery may have occurred within the three year limitations period.

text of U.C.C. conversion actions. To serve the statutory goals of negotiability, finality, and certainty, the court predicted that "under Pennsylvania law, in the absence of fraud by those invoking the statute of limitations, a cause of action for conversion of negotiable instruments accrues when, irrespective of the plaintiff's ignorance, the defendant wrongfully exercises dominion." *Id.* at 1231–32. This prediction in *Menichini* seems eminently well warranted, and plaintiffs have offered no intervening Pennsylvania case law that might call it into question. Instead, plaintiffs argue that because (i) PNC lost its bank records, (ii) PNC was "incredibly dilatory" in response to the Gresses' inquiries, and (iii) the Gresses themselves were "totally blameless" in failing to discover the alleged conversion, *Menichini* should not control. We disagree. *Menichini* is very clear that, despite its apparent harshness in individual cases, the U.C.C. both intends and implements a limitations regime that uses the date of injury as the accrual date. Thus, since plaintiffs' complaint, despite alleging negligence, has not alleged any fraudulent conduct, the discovery rule does not apply. *Id.*

 Plaintiffs' second argument is that, even under the "injury rule," PNC has not alleged that three years passed between the alleged conversion and the complaint's filing. In this case, the alleged injury under § 3420 is PNC's payment of the treasurer's check. The fact that, as plaintiffs have pled and PNC has observed, the check issued on November 4, 1993 does not resolve whether the check was cashed within three years of this complaint's filing. Since a statute of limitations argument is an affirmative defense, *see* Fed.R.Civ.P. 8(c), PNC has the burden of pleading that the injury was complete more than three years before the complaint was filed. Although evidence may yet emerge concerning whether PNC would cash a treasurer's check issued on November 4, 1993 at some point on or after April 22, 1996 (the earliest date that

would avoid the statute of limitations bar) such factual matters cannot be decided at this stage in the litigation. *See Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168 (3d Cir.1978) ("Under the law of this and other circuits ... the limitations defense may be raised on a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.' ") (quoting *Hanna v. United States Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir.1975)). Thus, PNC's motion to dismiss Count Three is denied.

## Negligence in Verifying Indorsements

In opposing Count Five of the complaint, which alleges negligence in PNC's failing to maintain the treasurer's check and related bank records, PNC asserts that it owed no duty to the Gresses, since plaintiffs were "neither customers of PNC nor account holders." As discovery progresses, this characterization of the relationship between the Gresses and PNC may prove correct, at which time the force of PNC's position concerning the bank's duty may require more direct evaluation. The complaint, however, does not appear to have pled sufficient facts to support (or, indeed, to deny) this characterization. For example, Count One of the complaint, which PNC does not dispute at this stage, asserts that the Gresses and PNC did have a contractual relationship of some kind. Therefore, whether this asserted contract or any other course of dealings between the parties was, or was not, sufficient to produce a duty to keep banking records is not at all clear, and PNC's motion to dismiss Count Five must be denied.

## Private Cause of Action Under Federal Banking Laws:

 In Count Six of the complaint, plaintiffs assert a private cause of action under "Federal and state law authority." PNC's response is two-fold. First, it moves under Fed.R.Civ.P. 12(e) to request a more definite statement, claiming that the pleading is "so vague or ambiguous"

that responsive pleading is impossible. With respect to the Gresses' federal law claims, we disagree. Attached to the complaint is a letter from Rudolph Sheats, an official at the Comptroller of the Currency Administrator of National Banks, which mentions banks' responsibilities under 12 U.S.C. § 1829b and 31 C.F.R. § 103.33 for keeping records. This letter is explicitly incorporated within the text of Count Six as "setting forth ... authority" for the alleged private cause of action. Mr. Sheats' letter does not, however, cite any state authority, and no such citation appears in any other part of the complaint. Thus, PNC's motion for a more definite statement is granted as to any state law claims asserted and is denied with respect to plaintiffs' claims under federal law.

■ Moreover, PNC argues that 12 U.S.C. § 1829b does not give rise to a private cause of action. Although the Gresses concede that no statutory or regulatory provision explicitly authorizes a private cause of action, they assert that principles articulated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), require such actions' implication. We disagree. It appears, from our survey of statutory text, purpose, and legislative history, that § 1829b was enacted to enable law enforcement officers and government banking officials to investigate tax, criminal, or regulatory violations; it was not "intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The statute itself outlines its factual predicate and underlying purpose:

(1) The Congress finds that adequate records maintained by insured depository institutions have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings....

...

(2) It is the purpose of this section to require the maintenance of appropriate types of records and other evidence by insured depositary institutions in the United States where such records have a high degree of usefulness in criminal, tax, or regulatory investigations and proceedings.

12 U.S.C. § 1829b(a). The statute's legislative history, both in its enactment and its subsequent amendments, only confirms this vision of the statute's requirements as not relying on or intending to authorize private enforcement. *See* H.R.Rep. No. 91–975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4394 (describing the need for the bill only as dealing with "major problems in law enforcement" associated with "law enforcement agencies[']" need for records in pursuing "[p]etty criminals, members of the underworld, those engaging in 'white collar' crime and income tax evaders").

An analysis of the four *Cort v. Ash* factors does not suggest a different result. First, private consumers like the Gresses–who are neither members of nor temporary assistants to any law enforcement agencies or officials–do not appear to be within a class for whose special benefit the statute was enacted. Second, plaintiffs cite no indication of legislative intent within the statutory text, structure, purpose, or history that Congress intended to create a private remedy, and we have not found any such evidence either. Third, the interjection of private enforcement as to private records does not seem entirely consistent with the general legislative banking scheme, which otherwise relies almost entirely on the Federal Deposit Insurance Commission for implementation. And fourth, although banking records are not generally regulated by state law, this factor is obviously insufficient, without more, to justify implying a private federal cause of action from a statute that otherwise does not indicate any intent to create such remedies.[6] For these reasons, PNC's mo-

---

6. Plaintiffs' citation to *Reschini v. First Feder-* *al Savings and Loan Association*, 46 F.3d 246,

tion to dismiss the federal law claims contained in Count Six is granted.

(3d Cir.1995), also fails to support their position. The *Reschini* court refused to imply a private cause of action under the Home Owners' Loan Act, and it did so notwithstanding the plaintiff's providing a significantly more detailed statutory analysis than has been rendered here with respect to § 1829b.